**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

No. 95-2067

GABRIEL RODRIGUEZ-AGUIRRE,
aka Refugio Rodriguez, aka Gabriel
Rodriguez, aka Gabriel Aguirre, aka
George Aguirre, aka Cuco Aguirre,

    Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of N.M.**
**(D.C. No. CR-92-486-1-JC)**

---

Charles L. Barth, Assistant United States Attorney (John J. Kelley, United States
Attorney, Laura Fashing, Special Assistant United States Attorney, with him on
the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

Paul J. Kennedy, Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **BALDOCK** and **BRORBY**, Circuit Judges, and **DANIEL**,[*] District Judge.

---

    [*] The Honorable Wiley Y. Daniel, United States District Judge for the
District of Colorado, sitting by designation.

**BRORBY**, Circuit Judge.

A New Mexico federal jury convicted Gabriel Rodriguez-Aguirre (hereinafter "Mr. Aguirre") on thirteen counts in a multi-defendant, multi-count indictment. The United States District Court for the District of New Mexico sentenced Mr. Aguirre to 360 months imprisonment and imposed a four million dollar fine against Mr. Aguirre. Mr. Aguirre now appeals his convictions. We exercise jurisdiction over his appeal pursuant to 28 U.S.C. § 1291.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Aguirre managed a family-run organization ("the Aguirre organization") specializing in the sale and distribution of large amounts of marijuana and cocaine. *United States v. Denogean*, 79 F.3d 1010, 1011 (10th Cir. 1996), *cert. denied*, 117 S. Ct. 154 (1996). Between 1984 and 1992, the organization sold more than 20,000 pounds of marijuana and over 20,000 pounds of cocaine to narcotics traffickers in New Mexico, Arizona, Utah, Kansas, Massachusetts, and elsewhere throughout the United States. *Id.* The organization used narcotics proceeds to purchase real property and other assets. *Id*.

In October 1992, a federal grand jury in the District of New Mexico

returned a twenty-three count indictment against Mr. Aguirre and twenty-one other defendants. The bill of indictment charged Mr. Aguirre with operating a continuing criminal enterprise, conspiracy to distribute marijuana, and multiple substantive counts of marijuana distribution and money laundering. Mr. Aguirre pled not guilty to the charges against him, and proceeded to trial with his co-defendants in January 1994.

The original trial of Mr. Aguirre and his co-defendants lasted six months, becoming "the longest federal criminal trial ever held in the district of New Mexico." *United States v. Rodriguez-Aguirre*, 73 F.3d 1023, 1024 (10th Cir. 1996). After deliberating for more than six weeks, the jury was unable to reach a verdict on the majority of counts. *Id.* Consequently, the trial judge declared a mistrial. *Id.*

In August 1994, the United States obtained a superseding indictment against Mr. Aguirre and nine of his co-defendants. The superseding indictment charged Mr. Aguirre with running a criminal enterprise, conspiracy to distribute marijuana and cocaine, and the unlawful importation of marijuana. The superseding indictment also charged Mr. Aguirre with illicit investment, money laundering, and multiple counts of marijuana and cocaine trafficking.

Mr. Aguirre moved to dismiss the continuing criminal enterprise and conspiracy charges (Counts I and II, respectively), arguing prosecution on those charges violated the Double Jeopardy Clause. Mr. Aguirre alleged he had already been charged and convicted of the same conspiracy and continuing criminal enterprise charges in a prior trial in the District of Kansas. This court affirmed those convictions in 1990. *See United States v. Armendariz*, 922 F.2d 602 (10th Cir. 1990), *cert. denied,* 502 U.S. 823 (1991).

In September 1994, the district court denied Mr. Aguirre's motion to dismiss on double jeopardy grounds. Mr. Aguirre appealed the district court's order, and on November 10, 1996, four days prior to the start of trial, we granted Mr. Aguirre's petition for a writ of prohibition and stayed his prosecution on Counts I and II of the superseding indictment pending the outcome of his interlocutory appeal.[1] *See Rodriguez-Aguirre v. Bunton*, No. 94-2243 (10th Cir. Nov. 10, 1994).

---

[1] On appeal, we ultimately determined the Double Jeopardy Clause did not prevent the government from trying Mr. Aguirre on Count I of the superseding indictment. *See Rodriguez-Aguirre*, 73 F.3d at 1027. With respect to Count II of the indictment, the government informed the court that it no longer sought to prosecute Mr. Aguirre on this count. *Id.* at 1025. Consequently, we remanded Count II so that the government could file a motion to dismiss this count with prejudice. *Id.*

-4-

In November and December 1994, the United States tried Mr. Aguirre on the superseding indictment. Prior to trial, the court randomly selected a jury panel of approximately 250 jurors from voter registration lists for the Roswell Division of the District of New Mexico. The district judge excused 132 jurors *sua sponte* after reviewing the juror questionnaires; the court directed only 115 jurors to report for jury service. Six days prior to trial, defense counsel were provided copies of juror questionnaires for the panel selected for service, and defense counsel learned the court had excused the remaining jurors.

On the first day of trial, prior to jury selection, Mr. Aguirre filed a motion to stay the proceedings, and co-defendant David Morales filed a motion to quash the jury venire[2]. The motions alleged the jury venire panel seriously misrepresented the ethnic makeup of the District of New Mexico. Specifically, the defendants claimed persons of Hispanic origin and American Indian background were underrepresented. The defendants sought a stay of the trial to allow time for an investigation of the ethnic background of all the jurors. In addition, Mr. Morales' counsel, Paul Kennedy, orally advised the court of *United*

---

[2] Pursuant to the court's order that "one motion made by one defense counsel applies to all [defendants] unless specifically excluded by that defendant," all of the defendants adopted the motions of Mr. Aguirre and Mr. Morales.

*States v. Calabrese*, 942 F.2d 218 (3d Cir. 1991), which Mr. Kennedy claimed stood for the proposition that it is reversible error for a court to exclude a juror prior to voir dire "simply because a juror knows a defendant." Mr. Kennedy claimed it appeared the court had excused at least one juror because the juror stated that he or she knew one of the defendants.

Following Mr. Kennedy's comments, the court held an evidentiary hearing at which Nancy Metzger, jury administrator for the Federal Court Clerk's office, testified. Ms. Metzger stated the jury panel of approximately 250 jurors had been randomly selected from voter registration lists. Ms. Metzger testified that the district judge reviewed the juror questionnaires and directed her to excuse more than 100 specific jurors. Ms. Metzger stated she did not know the ethnicity of either the excused jurors or the jurors who reported for service.

The court then stated it had reviewed the individual juror questionnaires and "retained the stack of those who, for some reason or other, claimed that they couldn't serve." The court explained:

> I think it goes without saying that the ones that were not summoned,
> I never looked at the last name, whether it was [a] Hispanic surname
> or whether it was not a Hispanic surname, or whether they were
> American Indians or not. As a matter of fact, I'm not real sure that
> that's part of the questionnaire --

Ms. Metzger confirmed the questionnaire forms did not direct the jurors to provide their ethnicity.

The district court denied the defendants' motion to stay the proceedings and the defendants' motion to quash the jury venire. However, the court allowed the defendants to supplement the record within ten days of the completion of the trial with information concerning the racial composition of the District of New Mexico and the Roswell Division. None of the defendants chose to supplement the record with such information.

Mr. Aguirre also filed a motion to sever his trial from that of his co-defendants on the first day of trial. Because the government's evidence focused on the conspiracy count for which Mr. Aguirre was not on trial, Mr. Aguirre alleged the evidence admitted against his co-defendants would have a "drastic spillover effect" and prevent him from receiving a fair trial. The district court orally denied Mr. Aguirre's motion to sever.

The trial of Mr. Aguirre and his co-defendants lasted approximately one month. On December 15, 1994, the jury returned a verdict against Mr. Aguirre on thirteen of the counts in the superseding indictment. Thereafter, Ms. Sonia

Gallegos, a co-defendant of Mr. Aguirre who was also convicted, filed a motion for a new trial. Mr. Aguirre adopted Ms. Gallegos' motion for a new trial pursuant to the district court's standing order that "anything that anybody files the others adopt." Mr. Aguirre argued, *inter alia*, he was entitled to a new trial because of jury misconduct. Mr. Aguirre attached an affidavit from defense investigator Kelly Owens to his motion. Mr. Owens testified that following the trial, he questioned nine of the twelve jurors who convicted Mr. Aguirre. Mr. Owens stated that one of the jurors, Linda Howard, admitted looking up the dictionary definition of the word "distribution" on the first day of deliberations and sharing its definition with the other jurors on the following day. According to Mr. Owens, Ms. Howard stated the jurors discussed the meaning of "distribution" as it related to the guilt or innocence of Ms. Gallegos. Mr. Owens also testified juror Ronnie Warmuth claimed he had knowledge of another juror researching the dictionary definition of the word "hypothecate."[3] In his post-trial

---

[3] The United States attached affidavits from jurors Ronnie Warmuth and Kerry Romine to the United States' response to Ms. Gallegos' motion for a new trial. Mr. Warmuth stated:

> On further reflection, I do not believe that a dictionary was used at all. The only definition which was questioned regarded the word "pontificate" as used by the witness John Henry Lee. Mr. Kerry Romine, a fellow juror, knew the definition of this word and no dictionary was consulted.

Similarly, Mr. Romine testified that although a question arose during

motion, Mr. Aguirre contended this improper juror conduct prejudiced him and entitled him to a new trial.

The district court denied Mr. Aguirre's motion for a new trial, rejecting the defendants' claim of jury misconduct. The court concluded the word distribution was one of common usage, and there was no showing any of the jurors relied upon its dictionary definition or that the dictionary definition "made any difference at all in the jury deliberations."

At sentencing, the district court adopted the factual findings and sentencing guideline application in Mr. Aguirre's presentence report. Accordingly, the court determined Mr. Aguirre had an offense level of 42, a criminal history category of II, and a sentencing range of 360 months to life. The court imposed the following sentence upon Mr. Aguirre: 60 months imprisonment on Count IV; 360 months imprisonment on Counts V, VII, VIII, XV, and XVII; 240 months imprisonment on Counts X, XI, XII, XVI, and XXII; and 120 months imprisonment on Counts XIII and XIX. The court ordered the sentences to run concurrently. The court also ordered Mr. Aguirre to pay the United States a fine of four million dollars on

---

deliberations as to the definition of the word "ponitificate," "the jury ... did not at any time consult a dictionary."

Count XV.

## II.  ISSUES RAISED ON APPEAL

Mr. Aguirre raises the following issues on appeal:  (1) whether the trial court abused its discretion in refusing to sever Mr. Aguirre's trial, failing to provide the jury with adequate limiting instructions and refusing to exclude evidence going only to the conspiracy; (2) whether the district court's pre-*voir dire* jury selection procedures violated Mr. Aguirre's constitutional rights or his rights under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861-1878 (1994); and (3) whether the district court abused its discretion in refusing to grant Mr. Aguirre a new trial based upon the jury's misconduct in looking up the dictionary definitions of certain words.

## III.  ANALYSIS

### A.  Severance, Limiting Instructions, and Admission of Evidence

Mr. Aguirre claims the trial court's refusal to sever his trial, to give adequate limiting instructions and to exclude evidence going only to the conspiracy count severely prejudiced him.  Mr. Aguirre contends the trial court's errors entitle him to a new trial.  We review each of Mr. Aguirre's contentions separately.

### 1. Severance

Mr. Aguirre first argues the district court abused its discretion by refusing to sever his trial from that of his co-defendants.  Mr. Aguirre asserts that in proving its case at trial, the United States "necessarily focused on the conspiracy alleged in count II of the indictment."  According to Mr. Aguirre, the evidence admitted as to the conspiracy was prejudicial to him.  Because Mr. Aguirre was not tried on the conspiracy count, he contends the district court should have severed his trial from that of his co-defendants.

A decision to grant or deny severance is within the sound discretion of the trial court and will not be disturbed on appeal unless there is an affirmative showing of abuse of discretion.  *United States v. Sanders*, 929 F.2d 1466, 1469 (10th Cir.), *cert. denied*, 502 U.S. 846 (1991).  To establish an abuse of discretion, the defendant must show actual prejudice resulted from the denial.  *Id.* Furthermore,

> "[i]n deciding on a motion for severance, the district court has a duty
> to weigh the prejudice resulting from a joint trial of co-defendants
> against the expense and inconvenience of separate trials ....  Neither
> a mere allegation that defendant would have a better chance of
> acquittal in a separate trial, nor a complaint of the 'spillover effect'
> from the evidence that was overwhelming or more damaging against
> the co-defendant than that against the moving party is sufficient to
> warrant severance."

*United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989) (quoting *United*

-11-

*States v. Hack*, 782 F.2d 862, 870 (10th Cir.), *cert. denied*, 476 U.S. 1184 (1986)).

As an initial matter, we note Mr. Aguirre was properly joined for trial pursuant to Fed. R. Crim. P. 8(b). Rule 8(b) permits the joinder of two or more defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 8 is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system. *United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir. 1980), *cert. denied*, 450 U.S. 969 (1981). Here, the evidence at trial revealed Mr. Aguirre and his co-defendants engaged in a common scheme or plan to distribute drugs and launder illegally gained proceeds. Thus, the joinder of Mr. Aguirre was proper and in accordance with Rule 8(b).

Under Fed. R. Crim. P. 14, the district court may grant a severance of defendants if it appears joinder results in prejudice to a defendant. In *Zafiro v. United States*, 506 U.S. 534, 539 (1993), the Supreme Court explained:

> a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is

admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice.

(Citation omitted.) Although a district court is more likely to determine separate trials are necessary where the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* Rule 14 leaves the determination of risk of prejudice and any remedy for such prejudice to the sound discretion of the district court. *Id.* at 541.

Having thoroughly examined Mr. Aguirre's arguments, we do not believe the district court abused its discretion in denying Mr. Aguirre's motion to sever. As stated, all of the charges against the defendants involved a common scheme or plan to distribute drugs and launder the illegally gained proceeds. With the exception of defendant Sonia Gallegos, all of the defendants were relatives. The evidence in this case, which involved acts occurring over an eight-year period, was massive and interrelated. In denying Mr. Aguirre's motion to sever, the district court appropriately determined considerations of judicial economy and expediency outweighed the potential prejudice to Mr. Aguirre. The district court concluded that limiting instructions would cure any unfair prejudice resulting

from the introduction of evidence on the conspiracy count which tended to implicate Mr. Aguirre.[4]  Given the considerable discretion afforded the district court under Rule 14, we cannot say it abused its discretion in refusing to grant a severance.

### 2. Limiting Instructions

Next, Mr. Aguirre contends the district court's failure to provide the jury with adequate limiting instructions caused him unfair prejudice.  According to Mr. Aguirre,

> the limiting instructions given in this case were not only ineffective, but were incorrect.  The trial court consistently instructed this jury that it was not to consider mountains of evidence against the Defendant "as to count II."  The trial court never understood that the jury could not consider the evidence as to count II since the Defendant was not charged in count II.  The purpose of the limiting instruction was to attempt to get the jury to disregard the evidence *as to the substantive counts* [*i.e.*, the counts other than conspiracy]....  Even if the [United States] could say that the limiting instructions might have had some effect in this case, the jury simply was not given the proper limiting instructions.

(Emphasis in original.)

---

[4]  In fact, the district court believed the use of limiting instructions "may well work to Mr. Gabriel Aguirre's benefit, because by the time I get through telling the jury, Now, you can't consider this as to Gabriel Aguirre, they may somewhere down the line think I'm telling them to find him not guilty as to everything."

We agree that the district court provided the jury with improper limiting instructions on several occasions. Rather than appropriately instructing the jury not to consider evidence submitted to prove the existence of a conspiracy when weighing Mr. Aguirre's innocence or guilt, the district court improperly advised the jury not to consider the conspiracy evidence as to Mr. Aguirre *on count II, the conspiracy count*. This was clearly erroneous; because the United States was not trying Mr. Aguirre on Count II, the jury obviously could not consider the conspiracy evidence against him on that count.

Unfortunately for the defense, Mr. Aguirre never objected to the inadequacy of the district court's limiting instructions.[5] Errors that are not timely raised in the district court are forfeited errors. *United States v. Olano*, 507 U.S. 725, 731 (1993). Fed. R. Crim. P. 52(b) provides a court of appeals with the discretion to correct a forfeited error that is "plain" and "affect[s] substantial rights." *Olano*, 507 U.S. at 731-32. In other words, we may correct the district court's errors only if its errors were obvious and prejudicial. *Id.* at 734. For an error to be prejudicial, "[i]t must have affected the outcome of the district court

---

[5] Although counsel for Mr. Aguirre stated at oral argument that he believed he had objected to the form of the district court's limiting instructions on at least one occasion, our review of the record indicates Mr. Aguirre never objected to the court's limiting instructions.

proceedings." *Id.*

As noted, the improper limiting instructions given by the district court in the case at bar were obviously erroneous. To determine whether Mr. Aguirre is entitled to relief under Rule 52(b), we must ascertain whether the limiting instructions were prejudicial to Mr. Aguirre. Mr. Aguirre cites four places in the record where the district court allegedly admitted prejudicial evidence via an inadequate limiting instruction. Our review of Mr. Aguirre's record cites indicates the trial court actually gave sufficient limiting instructions on two of the occasions he cites.[6] However, our careful review of the record reveals three

---

[6] Mr. Aguirre objects to the limiting instruction given by the court prior to the introduction of a number of documents seized from a home in Las Cruces, New Mexico. The limiting instruction provided by the court was as follows:

> [Y]ou may not consider any of these matters as -- insofar as Gabriel
> Aguirre is concerned, insofar as it relates to, pertains to, Count II of
> the superseding indictment. It is not, I repeat, not to be considered
> as to Gabriel Aguirre.

We find this instruction to be in accordance with law.

Mr. Aguirre also objects to the limiting instruction provided by the court prior to testimony concerning a notebook which purported to track various drug transactions conducted by the defendants. This testimony was preceded by the following instruction:

> You will not consider this as to Gabriel Aguirre for any purpose....

> Thank you. Do not consider this as to Gabriel Aguirre Count II at

additional occasions where the trial court admitted evidence pursuant to an inadequate limiting instruction. We now review the evidence admitted without a proper limiting instruction to determine if it was prejudicial to Mr. Aguirre.

First, the trial court admitted, without sufficient limiting instructions, a number of items (Exhibits 338 - 373) seized from the home of co-defendant Paula Denogean. These exhibits included a duffle bag, an electric bill, two certificates of title for trailers owned by Raul Hernandez, and a variety of other items. However, only two of these exhibits pertained to Mr. Aguirre. Exhibit 355 was a receipt from Columbus Electric Co-op addressed to Mr. Aguirre and Exhibit 359 was a 1099 interest form listing Mr. Aguirre and Ramon Aguirre as the interest recipients. We find nothing prejudicial about any of the items seized from Ms. Denogean's home. Indeed, we question whether a limiting instruction was even necessary prior to the introduction of these exhibits.

---

all. Mr. Aguirre is not charged in Count II. Do not consider it as to Mr. Aguirre.

*Id.* at 4139.) Although the second sentence of this instruction could appear ambiguous standing alone, "[jury] instructions must be read and evaluated in their entirety." *United States v. Denny*, 939 F.2d 1449, 1454 (10th Cir. 1991). Looking at this instruction as a whole, we believe it properly informed the jury not to consider the evidence against Mr. Aguirre for any purpose.

The trial court also admitted, with an inadequate limiting instruction, several items (Exhibits 301 - 314) seized from the home of Sonia Gallegos. The following items pertained to Mr. Aguirre: (1) a 1991 Victoria's Secret calendar; (2) a copy of a check stub made out to Mr. Aguirre from Old Republic Companies; (3) a United States Treasury check made out to Mr. Aguirre and containing a notation stating "VA comp."; (4) three checks made out to Mr. Aguirre and Carlos Fernandez from Sunbelt Intergroup; and (5) a letter from the "Third Circuit Court" referencing a civil judgment for DUI against Mr. Aguirre. Our review of the testimony concerning these exhibits reveals nothing inherently incriminating to Mr. Aguirre about the checks or the calendar. Although the calendar contained entries referencing phone conversations and meetings between Ms. Gallegos and Mr. Aguirre, the evidence at trial unambiguously established Ms. Gallegos and Mr. Aguirre were romantically involved, and Ms. Gallegos was involved in Mr. Aguirre's legal defense in the District of Kansas. Certainly the jury expected Mr. Aguirre and Ms. Gallegos to have had regular contact with one another. While the letter referencing Mr. Aguirre's DUI was somewhat prejudicial to Mr. Aguirre, we do not believe its admission was sufficiently egregious to have "affected the outcome of the district court proceedings." *See Olano*, 507 U.S. at 734.

Next, the district court preceded the admission of three tape recorded conversations between Mr. Aguirre and several other individuals (Exhibits 816 - 818) with an improper limiting instruction. Unfortunately, we have no means of determining whether the information on these tape recordings was prejudicial to Mr. Aguirre. The transcripts of the conversations were not included as part of the record on appeal. Without these transcripts, we have no means of determining whether the district court properly admitted this evidence. *See Neu v. Grant*, 548 F.2d 281, 286 (10th Cir. 1977) ("party seeking reversal must establish that alleged trial errors were prejudicial[;] [m]atters not appearing in the record will not be considered by the court of appeals"; *see also United States v. Hubbard*, 603 F.2d 137, 139-40 (10th Cir. 1979) (court cannot review claim of error "where the appellant has failed to bring up a transcript of the evidence bearing upon the issue").

The district court also gave an improper limiting instruction prior to testimony regarding a conversation between Danny Aguirre[7] and Oscar Gonzales. Although the conversation pertained to a drug transaction, Mr. Aguirre was not involved in the transaction or even mentioned by the testifying witness. Thus, we

---

[7] Danny Aguirre is the nephew of Gabriel Aguirre.

find Mr. Aguirre suffered no prejudice by the admission of this testimony.

Finally, the district court provided the jury with an improper limiting instruction following the testimony of George Suthers, a farm manager for a horse breeding operation. Mr. Suthers testified concerning the purchase of a number of horses from his company by some "Mexican men." Mr. Suthers stated the purchasers paid for the horses partially with cash, and Mr. Suthers identified Mr. Aguirre as one of the Hispanic men who purchased horses from his company. Because Mr. Aguirre was not charged with money laundering with respect to the purchase of horses from Mr. Suthers, the trial court should have instructed the jury not to consider Mr. Suthers' testimony against Mr. Aguirre as to the substantive counts against Mr. Aguirre. However, we do not find Mr. Suthers' testimony, without such a limiting instruction, to have seriously prejudiced Mr. Aguirre.

Moreover, looking at all of the evidence admitted without a proper limiting instruction together, we are unable to conclude the admission of this evidence affected the outcome of Mr. Aguirre's trial. An overwhelming amount of evidence was introduced at trial that established Mr. Aguirre's guilt on the substantive counts. In light of this overwhelming evidence, we conclude Mr.

Aguirre was not prejudiced by the district court's improper limiting instructions.

### 3. Admission of Evidence

Mr. Aguirre contends the district court's admission of the testimony of three of his former attorneys and the admission of evidence concerning the overt acts listed in the conspiracy count severely prejudiced him. We review the district court's admissions of evidence under an abuse of discretion standard. *United States v. Davis*, 40 F.3d 1069, 1073 (10th Cir. 1994), *cert. denied*, 115 S. Ct. 1387 (1995).

Co-defendant Sonia Gallegos called attorneys Joseph Johnson of Topeka, Kansas, Daniel Banks of Carlsbad, New Mexico, and Richard Winterbottom of Albuquerque, New Mexico, to testify at trial on her behalf. These attorneys were previously involved in representing Mr. Aguirre on federal drug charges in Kansas and New Mexico. Through their testimony, Ms. Gallegos sought to establish that her only involvement in the Aguirre organization was as an assistant to Mr. Aguirre's legal defense team. Although Mr. Aguirre objected to the testimony of his former attorneys on the grounds of prejudice and privilege, the district court permitted their testimony.

On appeal, Mr. Aguirre contends he was prejudiced by the testimony of his former attorneys because they testified about his Kansas conviction on drug charges and his defense strategies with respect to those charges. A thorough review of the testimony of Mr. Johnson, Mr. Banks and Mr. Winterbottom reveals Mr. Johnson and Mr. Winterbottom both testified concerning Mr. Aguirre's conviction in Kansas on drug charges. All three of the attorneys testified concerning the procedural posture of Mr. Aguirre's cases, as well as their responsibilities with respect to his defense. In particular, the witnesses described Ms. Gallegos' involvement in Mr. Aguirre's defense.

Although the district court could have done a better job in limiting the scope of the testimony of Mr. Aguirre's former attorneys, we cannot say the court abused its discretion in determining the probative value of the attorneys' testimony outweighed the danger of unfair prejudice. *See* Fed. R. Evid. 403. The attorneys' testimony was pivotal to the defense of Ms. Gallegos. The central tenet of Ms. Gallegos' defense at trial was that her only involvement in the Aguirre organization was as an assistant to Mr. Aguirre's legal defense team. Without the testimony of Mr. Aguirre's former attorneys, Ms. Gallegos would have been hard pressed to establish her defense. To the extent the testimony concerning Mr. Aguirre's Kansas conviction caused him unfair prejudice, such prejudice was

sufficiently quelled by the district court's closing instructions to the jury. The

district court specifically indicated in its closing instructions that the jury "must

not use [the Kansas] conviction as proof of the crime charged in this case." The

assumption that juries can and will follow the instructions provided by the trial

court "is fundamental to our system of justice." *Cardall*, 885 F.2d at 668. Thus,

we conclude the trial court did not abuse its discretion in permitting the testimony

of Mr. Aguirre's former attorneys.

Nor do we find the district court abused its discretion in allowing testimony

concerning the overt acts in the conspiracy count of the superseding indictment.

In his opening brief, Mr. Aguirre cites to seven places in the record where he

claims the district court improperly admitted certain prejudicial evidence

concerning the overt acts in the conspiracy count.[8] However, a review of the

_____

[8] Although Mr. Aguirre alleges other instances in which the trial court admitted allegedly prejudicial evidence, he does not connect these instances to specific cites. In the absence of essential references to the record in a party's brief, the court will not "sift through" the record to find support for the claimant's arguments. *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992). Thus, we refuse to determine the prejudicial effect, if any, of the uncited evidence.

Additionally, Mr. Aguirre's brief sets forth a list of 154 cites to places in the record where Mr. Aguirre allegedly objected to the admission of prejudicial evidence. However, Mr. Aguirre fails to connect any of these cites to specific evidence he claims was prejudicial. Thus, to the extent Mr. Aguirre asks this court to review the prejudicial effect of 154 pieces of evidence admitted following Mr. Aguirre's cited objections, we politely decline his request. *See*

record reveals Mr. Aguirre only objected at trial to the admission of evidence in two of the seven areas to which he now cites. We refuse to consider the prejudicial effect of any evidence that Mr. Aguirre failed to object to at trial.[9] *See* Fed. R. Crim P. 52(b). The evidence Mr. Aguirre opposed at trial was testimony concerning a seizure of marijuana from Mr. Aguirre in 1985 and

*Schaede v. Boeing Co.*, No. 95-3068, 1995 WL 736464, at *5 (10th Cir. Dec. 13, 1995) (unpublished decision) ("it is the appellant's responsibility to tie the salient facts, supported by specific record citation, to [his] legal contentions." (Citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995).

[9] As discussed earlier, Fed. R. Crim. P. 52(b) provides "[p]lain error or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the court." (Emphasis added.) "The decision to correct a plain error is within the 'sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."'" *United States v. Gomez*, 67 F.3d 1515, 1519 (10th Cir. 1995) (quoting *Olano*, 507 U.S. at 732), *cert. denied*, 116 S. Ct. 737 (1996). In section III.A.2 of this opinion, we exercised our discretion to review evidence admitted pursuant to inadequate limiting instructions for plain error. We chose to review this evidence primarily because Mr. Aguirre had requested the trial court to provide a limiting instruction with the evidence. By requesting such an instruction, Mr. Aguirre had put the court on notice that the evidence the government sought to admit was likely to prejudice Mr. Aguirre.

We decline to review for plain error the allegedly prejudicial evidence concerning the conspiracy that Mr. Aguirre failed to object to at trial. Our rationale is simply that Mr. Aguirre never put the district court on notice that this evidence was likely to prejudice him, and thus Mr. Aguirre never gave the court an opportunity to evaluate the evidence's prejudicial effect. Of course, even if we were to analyze this evidence for plain error, we strongly doubt its admission "seriously affect[ed] the fairness, integrity or public reputation" of the proceedings. *See Gomez*, 67 F.3d at 1519.

evidence regarding the transfer and purchase of a number of race horses.  With respect to the testimony concerning the 1985 seizure of marijuana from Mr. Aguirre, we note this testimony was preceded by a sufficient limiting instruction. Thus, we find the district court did not abuse its discretion in permitting its admission.  As for the evidence concerning the purchase of the race horses, we likewise find no error in its admission.  This evidence neither implicated nor prejudiced Mr. Aguirre.[10]  Hence, we conclude the trial court did not abuse its discretion in admitting any evidence pertaining to the overt acts in the conspiracy count of the superseding indictment.[11]

## B.  Jury Selection Process

Mr. Aguirre contends the district court's jury selection process violated his rights under the Jury Selection and Service Act as well as his Fifth and Sixth

---

[10]  The government elicited testimony concerning the purchase and transfer of certain race horses from United States Customs Special Agent Bailey.  Agent Hambrick testified as to the sale of a number of horses by Merrick-Allen Joint Venture.  Among the purchasers of these horses were Doloras Contreras, Raul Martinez, Art Lopez, and Dol-Mel-Kim-Joh Racing Quarter Horses.  Agent Hambrick's testimony was innocuous to Mr. Aguirre.

[11]  Mr. Aguirre also claims he was prejudiced by the testimony of George Suthers.  Although Mr. Aguirre did not object to this testimony, he did request a limiting instruction from the court.  Thus, we believe Mr. Suthers' testimony is entitled to plain error review.  Unfortunately for Mr. Aguirre, we have already determined Mr. Suthers' testimony did not severely prejudice Mr. Aguirre.  *See supra* at 21.  Hence, the trial court did not abuse its discretion in admitting this testimony.

Amendment rights.[12]

28 U.S.C. § 1867(d) requires all motions challenging compliance with the Jury Selection and Service Act to be accompanied by a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the [Jury Selection and Service Act]."  In the recent appeal of Mr. Aguirre's co-defendant and daughter, Doloras Contreras, we determined Ms. Contreras' claim under the Jury Selection and Service Act was barred by the defendants' failure to accompany their motions challenging the district court's jury selection procedures with an adequate sworn statement as required by 28 U.S.C. § 1867(d).  *United States v. Contreras*, __ F.3d ___ (10th Cir. Mar 11, 1997).  Here, as in *Contreras*, Mr. Aguirre failed to file a sworn affidavit in support of his motions challenging the district court's jury selection procedures.  Consequently, Mr. Aguirre's Jury Selection and Service Act claim is precluded.

Also in *Contreras*, we denied Ms. Contreras' Fifth and Sixth Amendment challenges to the district court's jury selection procedures.  *See id.* at ___.  Specifically, we determined Ms. Contreras could not establish a *prima facie* case

---

[12]  Mr. Aguirre has adopted the arguments of co-defendants Eleno Aguirre and David Morales with respect to the jury selection issues.

of a fair cross section violation or an equal protection violation, and we concluded Ms. Contreras' Sixth Amendment impartial jury claim was without merit. *Id.* For the reasons stated in *Contreras*, we likewise find no merit in Mr. Aguirre's constitutional challenges to the jury selection procedures.[13]


## C. Jury Misconduct

Finally, Mr. Aguirre contends the district court erred by failing to grant a new trial based upon the jury's misconduct in using a dictionary to look up the definition of the word "distribution."[14] In the recent appeal of Eleno Aguirre, we determined that although one juror researched the dictionary definition of "distribution," there was no evidence that any of the jurors relied upon or attached any significance to the dictionary definition. *United States v. Aguirre*, __ F.3d at ___ (10th Cir. Mar. 11, 1997). Consequently, we held the district court did not abuse its discretion by failing to grant Eleno Aguirre a new trial based upon juror misconduct. *Id.* at ___. Based on our reasoning in *Aguirre*, we likewise conclude

---

[13] In *Contreras*, we also determined the district court did not violate Fed. R. Crim P. 43 or 28 U.S.C. § 753(b) by failing to dismiss the 132 jurors in open court and in the presence of the defendants. *See id.* at ___. To the extent Mr. Aguirre asserts claims under Rule 43 or 28 U.S.C. § 753(b), these claims are rejected pursuant to our reasoning in *Contreras*.

[14] Mr. Aguirre has adopted the arguments of co-defendants David Morales and Eleno Aguirre on the jury misconduct issue.

-27-

the district court did not abuse its authority by failing to grant Mr. Aguirre a new trial based on juror misconduct.

## IV.  CONCLUSION

Based on the foregoing reasons, we hereby **AFFIRM** the convictions of Mr. Aguirre in all respects.