**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOSHUA E. WINGFIELD,

    Petitioner - Appellant,

v.

SEAN PRUITT,[*] Warden, A.V.C.F.; THE
ATTORNEY GENERAL OF THE STATE
OF COLORADO,

    Respondents - Appellees.

No. 20-1120
(D.C. No. 1:19-CV-00722-CMA)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY[**]**
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

Joshua Elliot Wingfield, a Colorado state prisoner proceeding pro se, seeks a

certificate of appealability (COA) to challenge the district court's denial of his 28 U.S.C.

§ 2254 petition for writ of habeas corpus. Even construing his claims liberally, *see*

*Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (advising that we must

construe pro se pleadings liberally), we conclude that Wingfield has failed to satisfy the

---

[*] We have substituted the current warden of A.V.C.F, Sean Pruitt, for the former warden of A.V.C.F, Terry Jaques, under Fed. R. App. P. 43(c)(2).

[**] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

standard for the issuance of a COA. Thus, we deny Wingfield a COA and deny his request to proceed on appeal *in forma pauperis.*

## BACKGROUND

On May 22, 2007, police discovered Wingfield hiding in a motel bathroom in Aurora, Colorado. A search of the motel room revealed the "tools and ingredients of a methamphetamine laboratory." R. at 490. The police arrested Wingfield, and the prosecution charged him with these crimes: (1) "possession of a precursor for methamphetamine or amphetamine," (2) "possession of chemicals or supplies to manufacture a schedule II controlled substance," (3) "conspiracy to manufacture and distribute a schedule II controlled substance," (4) "conspiracy to commit possession of chemicals or supplies to manufacture a schedule II controlled substance," and (5) "solicitation to commit possession of a precursor for methamphetamine or amphetamine." R. at 490.

In July 2007, before trial began, Wingfield underwent a competency evaluation. The evaluation found Wingfield competent to stand trial. Though represented by two lawyers (at different times) before trial, Wingfield requested to proceed pro se at trial. The court granted this request. A jury found Wingfield guilty on the first three counts but acquitted him on the fourth and fifth counts. On May 4, 2012, the court ruled that Wingfield qualified as a habitual criminal and sentenced him to forty-eight years' imprisonment.

Wingfield appealed, and the Colorado Court of Appeals affirmed. He then filed a writ of certiorari, which the Colorado Supreme Court denied. Wingfield then requested a

sentence reduction, which the state district court denied. Wingfield did not file an appeal this time, but on December 1, 2016, he filed a postconviction-relief motion. The state district court denied this motion, and the Colorado Court of Appeals affirmed.

On March 11, 2019, Wingfield initiated the instant § 2254 proceeding in Colorado federal district court. *Wingfield v. Jacques*, No. 19-cv-00722-CMA, 2020 WL 1234895, at *2 (D. Colo. Mar. 13, 2020). Wingfield initially raised five grounds for relief:

1) That the state court's failure to appoint him counsel "in his post-conviction proceeding" and its denial of his "*pro se* state post-conviction motion," despite his "mental disabilities," violated his "Sixth and Fourteenth Amendment rights";

2) That his pretrial counsel had provided ineffective assistance;

3) That the trial court had failed to provide him with "an adequate advisement on his right to testify," violating his "Fifth, Sixth, and Fourteenth Amendment[] rights";

4) That the trial court had erred in allowing defense counsel's waiver of Wingfield's "presence at the competency hearing," violating his "Sixth and Fourteenth Amendment rights"; and

5) That appellate counsel in Wingfield's direct appeal had provided ineffective assistance.

*Id.*

The district court dismissed as procedurally barred Wingfield's fifth claim. *Id.* It then ordered the government "to file an Answer that fully addressed the merits of Mr. Wingfield's properly exhausted claims 1, 3, and 4, and whether the procedurally defaulted ineffective assistance of counsel allegations in [claim 2] have substantial merit

3

under *Martinez v. Ryan*, 566 U.S. 19 (2012)." *Id.* Next, Wingfield "filed three motions to amend his § 2254 Application," raising additional claims. *Id.* at *3. The district court granted in part and denied in part the motions and "deemed" Wingfield's § 2254 application amended to include seven additional claims. *Id.* These claims asserted that:

6) The trial court's denial of "his request for a second competency evaluation" and its "fail[ure] to comply with statutory safeguards necessary to ensure against the prosecution of an incompetent defendant" violated his due-process rights;

7) The trial court's allowing Wingfield to represent himself during trial violated his "due process right to a fair trial" because he was incompetent;

8) The trial court's refusal to allow Wingfield "access to the discovery during trial" violated his "right to a fair trial and to present a defense";

9) The trial court's "forc[ing] him to defend against" improper 404(b) evidence violated his "due process right to a fair trial";

10) His direct-appeal appellate counsel had provided ineffective assistance "in failing to argue that Mr. Wingfield was entitled to an ameliorate effect of a subsequent change in the law related to the drug crimes for which he was convicted";

11) His direct-appeal appellate counsel had provided ineffective assistance "in failing to challenge the use of an attempted escape conviction as a predicate conviction for habitual offender sentencing"; and

12) His direct-appeal appellate counsel had provided ineffective assistance "in failing to raise issues Mr. Wingfield wanted to pursue on appeal and in refusing to allow him to assist in the appeal."

*Id.*

The district court denied Wingfield habeas relief on all grounds, dismissed his petition with prejudice, and denied him a COA. *Id.* at \*31. Wingfield now seeks a COA to challenge the district court's dismissal of his § 2254 petition.

**DISCUSSION**

Our granting a COA is a jurisdictional prerequisite to Wingfield's appeal from the denial of his § 2254 petition. *See* 28 U.S.C.§ 2253(c)(1)(A); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Before we will issue a COA, Wingfield must make "a substantial showing of the denial of a constitutional right." § 2253(c)(2). To obtain a COA on the claims that the federal district court dismissed on the merits, Wingfield must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

Wingfield's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), so we must "look to the District Court's application of AEDPA to [Wingfield's] constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Miller-El*, 537 U.S. at 336. And when a state court has adjudicated a claim on the merits, federal courts may grant habeas relief only if the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," § 2254(d)(1), or "was

5

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" § 2254(d)(2).

On the claims that the federal district court dismissed on procedural grounds—Wingfield's second and fifth claims—Wingfield must meet a double hurdle of demonstrating "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

## I. Liberal Construction

As his first appellate issue, Wingfield argues that he "was denied liberal construction by the state courts and the federal court." Appl. for COA at 5–6 ("The Court of Appeals and the U.S. District Court just evaded the liberal construction [doctrine]." (capitalization removed)). "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)); *see also Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994). Yet this liberal-construction principle "does not excuse" a litigant's obligation "to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden*, 32 F.3d at 455 (citation omitted). Nor does it obligate the courts "to assume the role of the advocate for the pro se litigant." *Hall*, 935 F.2d at 1110.

Wingfield argues that this doctrine requires courts to "read into [his pleadings] the strongest arguments suggested" and that the courts failed to "rule[] on liberal

6

construction." Appl. for COA at 5–6 (capitalization removed). He also misunderstands the liberal-construction doctrine as requiring the court to appoint counsel if it does not "read into [his] claims the strongest argument suggested." *Id.* at 6. But the federal district court[1] was not required to act as Wingfield's advocate and divine into his pleadings a strong argument that he did not raise; it was simply required to construe liberally his own arguments. In fact, the federal district court correctly described the pro se pleadings standard and liberally construed Wingfield's pleadings. *See Wingfield*, 2020 WL 1234895, at *5–29. Further, the liberal-construction doctrine does not require a court to appoint counsel for the defendant. As such, we deny Wingfield a COA on this ground.

## II.     Equal Protection

As his second appellate argument, Wingfield asserts that he was "[d]enied equal protection under the law" based on "poverty and mental illness" and was "forced to proceed while suffering from extreme psychosis without the assistance of counsel." Appl. for COA at 7. But Wingfield failed to raise this argument in his § 2254 petition, so he has waived appellate review of the issue. *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) ("[A]s to issues that were not presented to the district court, we adhere to our general rule against considering issues for the first time on appeal." (citation omitted)). And even if Wingfield had raised this argument in the district court, his argument in his

---

[1] We decline to address whether the state courts liberally construed Wingfield's pleadings, because Wingfield failed to raise this liberal-construction argument in his § 2254 motion. *See United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (declining to "deviate from the general rule that we do not address arguments presented for the first time on appeal" (citation and internal quotation marks omitted)).  !

application for a COA fails to demonstrate an equal-protection violation. He does not point to a single fact supporting this conclusory allegation or cite a single equal protection case. Nor does Wingfield compare his circumstances to any similarly situated individuals as required to support an equal protection claim. *See Bruner v. Baker*, 506 F.3d 1021, 1029 (10th Cir. 2007) ("Because [the defendant] has failed to point to any similarly situated individuals, let alone similarly situated individuals treated differently, his class-of-one equal protection claim must fail.").

## III.     Due Process

Wingfield next contends that he was "forced to proceed while suffering from extreme psychosis without the assistance of counsel" which "also denied [him] due process." Appl. for COA at 4. Liberally construing this argument, we first read this as asserting "that the state trial court violated his Sixth and Fourteenth Amendment rights" by "fail[ing] to appoint counsel in his post-conviction proceeding[.]" *Wingfield*, 2020 WL 1234895, at *5. But jurists of reason could not debate the district court's dismissal of this claim because "there is no federal constitutional right to post-conviction representation." *Yang v. Archuleta*, 525 F.3d 925, 927 n.2 (10th Cir. 2008) (citing *Fleming v. Evans*, 481 F.3d 1249, 1255–56 (10th Cir. 2007)).

We also recognize that Wingfield might possibly be arguing that the state trial court denied him due process by making him proceed at trial, despite his being incompetent. This argument also fails.

It is well settled that the "criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453 (1992); *see also United States v.*

*Williams*, 113 F.3d 1155, 1160–61 (10th Cir. 1997). But procedural and substantive competency claims differ. *Grant v. Royal*, 886 F.3d 874, 892–93 (10th Cir. 2018) ("Thus a petitioner alleging a substantive competency claim must show that he was convicted during a period of incompetency, whereas a procedural competency petitioner states a procedural competency claim by alleging the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue." (citations and internal quotation marks omitted)), *cert. denied sub nom. Grant v. Carpenter*, 139 S. Ct. 925 (2019). Wingfield provides no context for this claim, so it is unclear whether he is arguing a denial of due process based on procedural or substantive competency. We construe this as a procedural competency claim, asserting that "the trial court violated Mr. Wingfield's due process rights" by "den[ying] his request for a second competency evaluation" and "fail[ing] to comply with statutory safeguards necessary to ensure against the prosecution of an incompetent defendant." *Wingfield*, 2020 WL 1234895, at *3.

The Colorado Court of Appeals determined that "the trial court did not abuse its discretion in denying Wingfield's request for a second competency examination" and "did not violate Wingfield's right to due process by allowing him to be tried despite his alleged incompetence[.]" *Id.* at *17–18 (citations and internal quotation marks omitted). In reviewing the Colorado Court of Appeals' decisions, the federal district court concluded that though it was a "close question, based on the totality of the evidence in the state court proceeding," "the Colorado Court of Appeals' resolution of the procedural

9

competency claim did not constitute an unreasonable application" of federal law.[2] *Id.* at *23. After reviewing the record and the courts' orders, we conclude that reasonable jurists could not debate the district court's resolution of this claim.

Significantly, a psychiatrist, Dr. Rose Manguso, produced a written opinion determining that Wingfield was competent to proceed to trial. Dr. Manguso and other "forensic psychiatric staff members" stated that "Mr. Wingfield engages in maladaptive behavior deliberately," and the state trial court noted that he was able "for the most part" to "conduct[] himself professionally throughout the proceedings and [that he] complied with procedural rules." *Id.* at *21. Moreover, the trial court held an initial competency hearing "and determined that Mr. Wingfield was competent to proceed to trial." *Id.* at *10. Still, the trial court provided Wingfield with an opportunity to dispute the court's competency findings, allowing a second examination by his treating psychiatrist, Dr. Mozer. *Id.* at *19. Yet "Dr. Mozer did not render an opinion that Mr. Wingfield was incompetent," and at no point did Wingfield ever "make an offer of proof of his incompetence from any other mental health provider." *Id.*

Further, though the trial court disagreed with Wingfield's decision to proceed pro se, it found that his decision was not irrational. The trial court acknowledged that it agreed with Wingfield's other decisions during the proceedings, and it also noted that his

---

[2] It also concluded that "Wingfield's allegation in claim six that the trial court failed to comply with Colorado statutory safeguards necessary to ensure against the prosecution of an incompetent defendant raise[d] a state law issue not cognizable in [a] federal habeas corpus proceeding." *Wingfield*, 2020 WL 1234895, at *19 n.4 (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

decision to proceed pro se appeared to stem from a distrust of his current attorney, not from incompetence.

The trial court also made extensive findings based on its personal observations of Wingfield's competency, supporting its decision not to conduct a second competency hearing. It found that Wingfield had "successfully" contributed to the trial, had "fully engaged in the pretrial motions," and had even demonstrated "a somewhat sophisticated knowledge" concerning the relevant legal issues. *Id.* at * 20 (citation and internal quotation marks omitted). Notably, at the end of trial, the trial court stated that Wingfield had "conducted [his] trial on an amazingly sophisticated level." *Id.* at *21 (citation and internal quotation marks omitted).[3]

In sum, based on the totality of the evidence, we conclude that Wingfield has failed to show that the district court's resolution of his due-process claim was either debatable or wrong. Thus, we deny Wingfield a COA on this claim.

## IV. Waived Arguments

Under the heading of his third issue, Wingfield's entire argument reads as follows: "Illegal search and seizure, forced to proceed pro-se while suffering psychosis, compelled to testify against myse[lf,] denied not guilty by reason of insanity plea, there was juror

---

[3] We could also construe Wingfield's claim as one for substantive competency, that is, that the trial court violated "his due process right to a fair trial by allowing him, while incompetent, to represent himself[.]" *Wingfield*, 2020 WL 1234895, at *3. But a substantive competency claim requires Wingfield to "show that he was convicted during a period of incompetency." *Grant*, 886 F.3d at 893 (citation omitted). Our discussion above outlines how Wingfield has failed to make such a showing.

11

misconduct, prosecutorial misconduct, judicial bias, [and] disproportionate sentencing." Appl. for COA at 7 (capitalization removed).

Wingfield fails to provide any legal argument, any claim of error by the district court, or any discussion regarding these issues. He also fails to cite the record. Even construing his filing liberally, we conclude that Wingfield has failed to comply with Federal Rule of Appellate Procedure 28(a)(8)(A), which applies to pro se litigants and requires in part that an opening brief contain a "clear and accurate statement of the arguments," including the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840–41 (10th Cir. 2005) (quoting parts of Federal Rule of Appellate Procedural 28) (internal quotation marks omitted).

As discussed, though we liberally construe a pro se litigant's pleadings, we "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* at 840. Wingfield has failed to "tie the salient facts, supported by specific record citation, to [his] legal contentions," *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (alteration in original) (citation and internal quotation marks omitted), or to "explain to us why the district court's decision was wrong[,]" *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). His conclusory list of grievances does not suffice. *See Craig v. McCollum*, 590 F. App'x 723, 726 (10th Cir. 2014) (unpublished) ("[Defendant]'s conclusory allusion to the . . . arguments he made before the district court cannot prevent abandonment." (citation omitted)). As such, Wingfield has failed to carry his burden, and

we decline to "fill the void by crafting arguments and performing the necessary legal research" for him.[4] *Christensen v. Norman*, 791 F. App'x 755, 757 (10th Cir. 2019) (unpublished) (quoting *Garrett*, 425 F.3d at 841) (internal quotation marks omitted). ⏐

## CONCLUSION

Accordingly, we deny Wingfield's request for a COA and dismiss the matter. Because Wingfield has failed to provide any argument for why the district court's denial of his habeas petition was in error, he has not set forth any nonfrivolous arguments. So we also deny his request to proceed on appeal *in forma pauperis*. *See Standifer v. Ledezma*, 653 F.3d 1276, 1280–81 (10th Cir. 2011) (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812–13 (10th Cir. 1997)).

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[4] In fact, after independently reviewing the record and the district court's order, we conclude that, for substantially the same reasons given by the district court, no reasonable jurist could debate the correctness of its rulings.

13