PUBLISH

F I L E D
United States Court of Appeals
Tenth Circuit

AUG 18 1999

PATRICK FISHER
Clerk

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

vs.

JAMES EADS,

      Defendant-Appellant.

No. 98-1331

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## (D.C. No. 96-CR-203-S)

Submitted on the briefs:[*]

Nathan D. Chambers, Chambers, Dansky and Hansen, P.C., Denver, Colorado, for Defendant-Appellant.

John M. Hutchins, James R. Boma, Assistant United States Attorneys, and Linda A. McMahan, United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

**KELLY**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore is ordered submitted without oral argument.

Defendant-Appellant James Eads appeals his conviction and sentence after a jury trial of conspiracy to possess with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), 846 (count 1); possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1) & (b)(1)(A), 18 U.S.C. § 2 (count 2); and using or carrying a firearm in connection with a drug trafficking offense, 21 U.S.C. § 841(a)(1), 18 U.S.C. §§ 924(c), 2 (count 3).  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

We recount the facts in the light most favorable to the government because a jury convicted Mr. Eads.  See United States v. Green, 175 F.3d 822, 827 (10th Cir. 1999).  On April 9, 1996, an undercover government agent delivered approximately one pound of a substance containing methamphetamine to Mr. Eads in a hotel room in California.  See 8 R. at 72-75, 91.  In exchange Mr. Eads provided firearms, ammunition and an explosive device which he identified as coming from co-defendant Robert Bernhardt, and U.S. currency.  See id. at 77.  This transaction was videotaped.

The government also presented evidence at trial of numerous drug transactions not directly involving Mr. Eads, but involving his co-defendants.

This evidence manifested a wide-spread enterprise that exchanged drugs for weapons, explosives, and money. Mr. Eads was tried jointly with Robert Bernhardt and Jon Williams. He was sentenced to life imprisonment on count 1, 235 months imprisonment on count 2 to be served concurrently with count 1, and thirty years imprisonment on count 3 to be served consecutively.

In this appeal, Mr. Eads claims that (1) the district court's denial of his motions for severance denied him a fair trial; (2) there was insufficient evidence that he participated in the charged conspiracy; (3) the court erred in admitting statements of alleged co-conspirators; (4) the jury instructions violated his right to have the charges proved beyond a reasonable doubt; (5) there was insufficient evidence that he had been twice convicted of felony drug offenses; (6) his sentence should not have been enhanced based on the purity of the drugs involved in the transaction because of the government's control over the quality of the drugs; and (7) the thirty-year sentence under 18 U.S.C. § 924(c)(1) was improper absent a finding that he knew that the firearm in question was a machine gun.

Discussion

I. Denial of Motions for Severance

Mr. Eads first argues that the district court abused its discretion in denying his motions for a separate trial because of the disparity in the weight of the

evidence as to his co-defendants and because of comments made by counsel for a co-defendant. We review the court's denial of severance for an abuse of discretion. See United States v. Rodriguez-Aguirre, 108 F.3d 1228, 1233 (10th Cir. 1997). "To establish an abuse of discretion, the defendant must show actual prejudice resulted from the denial." Id. Further, on a motion for severance, "the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials. . . . [A] complaint of the 'spillover effect' from the evidence that was overwhelming . . . against the co-defendant . . . is [not] sufficient to warrant severance." Id. (quoting United States v. Cardall, 885 F.2d 656, 668 (10th Cir. 1989)).

Although evidence regarding Mr. Eads' participation in the conspiracy was completed by the end of the second day of a twelve-day trial, much of the subsequent evidence demonstrated the scope of the conspiracy. Having examined Mr. Eads' allegations of actual prejudice, we do not believe that the district court abused its discretion in denying his motion to sever. Even if there were some risk of prejudice to Mr. Eads, it was addressed by the limiting instructions given by the court, see 10 R. at 427; 1 R. doc. 485, Instrs. nos. 7, 8, 9, and "we presume that juries follow such instructions." United States v. Lane, 883 F.2d 1484, 1498 (10th Cir. 1989).

- 4 -

## II. Sufficiency of Evidence—Conspiracy

Mr. Eads contends that count 1 of the Third Superseding Indictment should have been dismissed on the grounds that the evidence failed to establish his involvement in the charged conspiracy, but instead established multiple, separate conspiracies. We review this challenge to the sufficiency of the evidence de novo, "viewing the circumstantial and direct evidence along with the reasonable inferences therefrom in the light most favorable to the government, to determine whether a reasonable jury could find [Mr. Eads] guilty of a single conspiracy beyond a reasonable doubt." United States v. Vaziri, 164 F.3d 556, 565 (10th Cir. 1999).

"Conspiracy requires proof of (1) an agreement with another person to break the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement in the conspiracy; and (4) interdependence among the alleged conspirators." Id. Count 1 of the Third Superceding Indictment charged Mr. Eads with conspiring with others from March 15, 1996 through June 10, 1996. See 1 R. doc. 155 at 1-2. Mr. Eads argues that the evidence at trial established only that he was involved in a drug transaction on April 9, 1996, while there was abundant evidence "that other alleged co-conspirators were engaged in a massive operation to manufacture explosives, modify firearms and then exchange bombs and guns for drugs." Aplt. Reply Brief

- 5 -

at 2.

We think there was sufficient evidence for the jury to find that Mr. Eads participated in the charged conspiracy. There was considerable evidence of an agreement and cooperation between Mr. Eads and Mr. Bernhardt. See 8 R. at 77, 90-92; 9 R. at 112. The videotape shows that Mr. Eads had known Mr. Bernhardt for four months prior to the April 9 transaction, traded the firearms on behalf of Mr. Bernhardt, and attempted to phone him several times during the transaction. See 1 R. Supp. (redacted videotape). When the undercover agent and informant indicated that they would be coming to Colorado in a few weeks, Mr. Eads indicated that he was the contact person for the operation: "I'm the only in-let. It's the truth. I'm the only one hustler there is, in the whole area." 1 R. Supp.; Aplt. App. tab 1 at 36. Mr. Eads indicated that he had "been in the business 22 years," 1 R. Supp.; Aplt. App. tab 1 at 20, and that, since he had been back, he had "been doing it all." 1 R. Supp.; Aplt. App. tab 1 at 45.

Even though Mr. Eads claims to have had no contact with other alleged conspirators, he "need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy [as long as he has] a general awareness of both the scope and the objective of the enterprise." United States v. Evans, 970 F.2d 663, 669-70 (10th Cir. 1992) (internal quotation marks and citations omitted). Further, it is generally "sufficient for purposes of a single-

conspiracy finding that a conspirator knowingly participated with a core conspirator in achieving a common objective with knowledge of the larger venture." Vaziri, 164 F.3d at 565 (quotation marks and citation omitted). We hold that the evidence was sufficient for a reasonable jury to convict Mr. Eads on the conspiracy count.

### III. Hearsay Ruling

Mr. Eads argues that, because there were multiple conspiracies rather than a single conspiracy, the district court erred by admitting statements of alleged co-conspirators pursuant to Fed. R. Evid. 801(d)(2)(e). We review the district court's decision to admit statements of a co-conspirator for abuse of discretion. See United States v. Wolf, 839 F.2d 1387, 1393 (10th Cir. 1988).

Co-conspirator statements are not considered hearsay under Rule 801(d)(2)(E) and may properly be admitted if the court finds: "1) a conspiracy existed; 2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and 3) the statement was made in the course of and in furtherance of the conspiracy." United States v. Caro, 965 F.2d 1548, 1557 (10th Cir. 1992). In support of his assertion that co-conspirator statements should not have been admitted, Mr. Eads relies solely on his earlier argument that there was insufficient evidence for the jury to find that he

participated in a conspiracy. However, because we have already held that there was sufficient evidence regarding Mr. Eads' participation in the conspiracy, we cannot say that the district court erred in admitting Rule 801(d)(2)(E) evidence.

## IV. Jury Instructions

Mr. Eads maintains that the district court's jury instructions violated his due process right to have the charges against him established beyond a reasonable doubt. The court instructed the jury that "[a]ny finding of fact you make must be based on probabilities, not possibilities." 1 R. doc. 485, Instr. 1 at 5. Mr. Eads contends that this instruction improperly reduced the government's burden of proof and diluted the presumption of innocence.

We review de novo a jury instruction when an objection is made at trial, see United States v. Fabiano, 169 F.3d 1299, 1302 (10th Cir. 1999), and ask whether the jury, viewing the instructions as a whole, was misled. See id. at 1303. It is helpful in this case to view the context of the instruction that Mr. Eads finds offensive. The instruction was given as part of a general charge to the jury, and provides, in pertinent part:

> Any finding of fact you make must be based on probabilities, not possibilities; it may not be based on surmise, speculation, or conjecture. You must not be influenced by sympathy or by prejudice for or against any party in this case. Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything other than the evidence in the case and the instructions of

the Court.

. . .

> You must presume a defendant in a criminal case to be innocent of the crime charged. Thus a defendant, although accused of a crime in the indictment, begins the trial with a "clean slate"—with no evidence against him or her. The presumption of innocence stays with the defendant throughout the trial and entitles him to a verdict of not guilty, unless and until you, the jury, find that the evidence received during the trial has established each and every essential element of the crimes charged beyond a reasonable doubt.

1 R. doc. 485, Instr. 1 at 5-6.

Considering this instruction in its entirety, we hold the jury was not improperly instructed on the government's burden of proof of beyond a reasonable doubt, nor misled as to the presumption of innocence. The jury was explicitly instructed as to the presumption of innocence. The instruction reminds the jury it must find Mr. Eads guilty of each element of the offense charged beyond a reasonable doubt, or it must find him not guilty. The language complained of by Mr. Eads merely describes the degree of certainty with which the jury must determine the underlying factual issues, not the degree of certainty needed to find him guilty. The inclusion of the "probabilities, not possibilities" language in no way lessened the beyond a reasonable doubt standard, especially in view of the fact the instruction specifically cautioned the jury "not to single out one instruction alone," but to "consider the instructions as a whole." Id. at 1.

## V. Sufficiency of Evidence—Prior Drug Convictions

Mr Eads argues that there was insufficient evidence to prove that he had two prior felony drug convictions. Finding that the government had proven these convictions beyond a reasonable doubt, the court sentenced him to life imprisonment pursuant to 21 U.S.C. § 841. Mr. Eads concedes a 1989 conviction, but maintains that the government did not meet its burden of proof because it failed to tie the 1979 fingerprints of a James Herman Eads with a 1979 state court conviction of a James Herman Eads. It is uncontroverted that the 1979 fingerprints matched those taken in 1996 of the defendant.

In assessing a claim of insufficient evidence, "we review the entire record de novo in the light most favorable to the government to determine whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." Green, 175 F.3d at 831 (internal quotation marks and citation omitted). Having reviewed the record, we hold that it was reasonable for the district court to find beyond a reasonable doubt that Mr. Eads was convicted of a state felony drug offense in 1979. The date and location of the fingerprints matched the date and location of the perpetration of the offense for which James Herman Eads was convicted. This circumstantial evidence sufficiently supported the court's finding.

## VI. Sentencing—Amount of Methamphetamine

Mr. Eads also contends that the district court erred in determining his sentence based on the actual amount of methamphetamine that he purchased rather than on the weight of the mixture. According to 21 U.S.C. § 841(b)(1)(A)(viii) (1996), the statute in effect when he committed the crime, Mr. Eads could only be sentenced to life imprisonment if he possessed "100 grams of more of methamphetamine . . . or 1 kilogram or more of a mixture . . . containing a detectable amount of methamphetamine." The substance that was sold to Mr. Eads weighed 454 grams and was seventy percent pure methamphetamine. At sentencing, the court determined that the substance was 317.9 grams of actual methamphetamine and, because this exceeded 100 grams, sentenced Mr. Eads to life imprisonment. We review the court's factual findings as to the amount of methamphetamine for clear error, and review legal issues de novo. See United States v. Hardwell, 80 F.3d 1471, 1497 (10th Cir. 1996).

According to Mr. Eads, the government impermissibly manipulated his sentence by controlling the purity of the substance that it sold to him. Thus, in determining his sentence, the court should have used the weight of the total mixture rather than the weight of the pure methamphetamine contained within the mixture. In support of this argument, he finds an analogy in USSG § 2D1.1 comment. (n.15), which authorizes a downward departure when an undercover

- 11 -

agent sells a controlled substance at a substantially reduced price, thereby inducing a defendant to purchase more than he otherwise would. We find his argument to be without merit.

In United States v. Lacey, 86 F.3d 956 (10th Cir. 1996), we analyzed a claim of sentencing manipulation under our established "outrageous governmental conduct" standard. See id. at 963. Under this standard, we ask "whether, considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." Id. at 964 (internal quotation marks and citation omitted). We utterly fail to see such conduct here. Mr. Eads does not claim that he was induced to purchase a purer batch of drugs than he otherwise would; nor can he make such a claim, given the fact that he tested the methamphetamine himself and pronounced, "[I]t's fine it's good." Aplt. App. tab 1 at 53. Thus, we hold that the district court did not clearly err in finding that Mr. Eads possessed more than 100 grams of methamphetamine.

VII. Sentencing—Knowledge Requirement for Machine Gun

Finally, Mr. Eads claims that the district court erred in imposing a thirty year sentence pursuant to 18 U.S.C. § 924(c)(1)(B)(ii) (1996) absent a finding that he knew that one of the firearms was a machine gun. The court held that

such a finding was unnecessary, but nonetheless noted that circumstantial evidence supported such a finding. There is no dispute that Mr. Eads "used or carried" a firearm in relation to a drug trafficking crime, and that the firearm in question was a machine gun. Although the jury found by way of a special interrogatory that the firearm was a machine gun, neither the jury instructions nor the verdict form required the jury to find that Mr. Eads knew of this fact. We review de novo the court's interpretation of § 924(c)(1). See United States v. Oberle, 136 F.2d 1414, 1423 (10th Cir.), cert. denied, 119 S. Ct. 197 (1998).

At the time of the offense, § 924(c)(1) provided, in pertinent part,

> Whoever, during and in relation to any . . . drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime, be sentenced to imprisonment for five years, . . . and if the firearm is a machinegun, . . . to imprisonment for thirty years.

Mr. Eads cites Staples v. United States, 511 U.S. 600 (1994), and Jones v. United States, 119 S. Ct. 1215 (1999), as authority for his argument. In Staples, the Supreme Court held that, to obtain a conviction under the National Firearms Act, 26 U.S.C. § 5861(d), the government must prove beyond a reasonable doubt that the defendant knew of the characteristics of his firearm which brought it within the statutory definition of a machine gun. See Staples, 511 U.S. at 618-20. In Jones, the Court held that 18 U.S.C. § 2119, the federal carjacking statute, establishes three separate offenses rather than one offense with separate

enhancements. See Jones, 119 S. Ct. at 1228. We find both cases to be distinguishable from the instant case.

The Court emphasized in Staples that its holding was "narrow," Staples, 511 U.S. at 619, and acknowledged in Jones that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration." Jones, 119 S. Ct. at 1219. The statute in Staples prohibited possession of certain types of firearms, but was silent regarding the mental state required to commit the offense. The Staples Court was concerned that "dispensing with . . . a mens rea requirement would . . . result[] in reading the statute to outlaw a number of apparently innocent acts." Staples, 511 U.S. at 610. As other circuits have noted, "[s]uch concerns are absent here because 'the § 924(c) defendant whose sentence is enhanced based on the type of weapon he carried has demonstrated a "vicious will" by committing the principal offense.'" United States v. Shea, 150 F.3d 44, 52 (1st Cir.), cert. denied, 119 S. Ct. 568 (1998) (quoting United States v. Brantley, 68 F.3d 1283, 1290 (11th Cir. 1995)); see also United States v. Gilliam, 167 F.3d 628, 638 (D.C. Cir.), cert. denied, 119 S. Ct. 2060 (1999).

The rationale for these holdings that a separate mens rea for the type of weapon need not be proven is the view that § 924(c)(1)(B) is a sentencing enhancement rather than an element of the offense. However, a very broad

statement in <u>Jones</u> seems to call this rationale into question. There, the Court articulated the principle that

> under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

<u>Jones</u>, 119 S. Ct. at 1224 n.6. Mr. Eads argues that, because the fact that the firearm was a machine gun increased his sentence from five to thirty years, this language requires us to hold that the machine gun provision of § 924(c) is an element of the offense, for which a separate mens rea must be proven.

Other circuits are divided on this issue of whether the "firearm type" provisions of § 924(c)(1)(B) are elements of the crime, or merely sentencing enhancements. According to the Ninth Circuit, "[i]f the 30-year consecutive sentence is to be imposed under section 924(c)(1), the fully automatic character of the firearm must be found by the jury; that is to say, it is an element of the crime." <u>United States v. Alerta</u>, 96 F.3d 1230, 1235 (9th Cir. 1996). The Sixth Circuit also stated that "if the jury returns a guilty verdict on the gun charge, it must specify which category or categories of weapons it unanimously has found the defendant was using or carrying." <u>United States v. Sims</u>, 975 F.2d 1225, 1235 (6th Cir. 1992).

In contrast, the Fifth Circuit in <u>United States v. Branch</u>, 91 F.3d 699, 738-

- 15 -

740 (5th Cir. 1996), reviewed the legislative history of § 924(c)(1) and concluded that "Congress did not intend to create a new, separate offense by adding the machine gun clause of § 924(c)." Id. at 740. The Fifth Circuit more recently held that this conclusion does not conflict with Jones because

> the legislative history contained conflicting indications of whether Congress intended for 18 U.S.C. § 2119, the statute at issue [in Jones], to lay out three distinct offenses or a single crime with three maximum penalties. In contrast, the legislative history of § 924(c)(1) discloses that Congress consistently referred to the machine gun clause as a penalty and never indicated that it intended to create a new, separate offense for machine guns.

United States v. Castillo, No. 97-50708, 1999 WL 417860, at *4 (5th Cir. Jun. 22, 1999) (citation omitted). The Eleventh Circuit also surveyed these cases and concluded "that the type of firearm involved in a § 924(c) offense is not an element of the offense and is thus not a question for the jury." United States v. Alborola-Rodriguez, 153 F.3d 1269, 1272 (11th Cir. 1998), cert. denied, 119 S. Ct. 1809 (1999).

Having reviewed these cases, we agree with the Fifth Circuit that the type of firearm used or carried is a sentencing enhancement rather than an element of the offense, and that this is not in conflict with the Supreme Court's decision in Jones. This is a more reasonable reading of Jones, one that anchors its holding to its facts, i.e., the statutory provision involved. However, even if we were to decide that the type of firearm was an element of the crime, the error would be

subject to harmless-error analysis.  See Neder v. United States, 119 S. Ct. 1827, 1837 (1999).  Given the district court's finding that there was sufficient evidence that Mr. Eads knew that the firearm was a machine gun and the jury's specific finding that the firearm was a machine gun, it appears "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

AFFIRMED.