**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FEDERICO MEDINA,

    Defendant-Appellant.

No. 00-2028

(D.C. No. CR-94-541-JC)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BALDOCK**, and **BRORBY**, Circuit Judges.

Defendant Federico Medina appeals the district court's admission of a co-conspirator's out-of-court statement that Defendant was one of the owners of a kilogram of cocaine which a co-conspirator sold to undercover officers. Defendant argues that the government presented insufficient evidence that he was a participant in the conspiracy. Defendant also appeals the district court's denial of his motion for a judgment of acquittal based on the insufficiency of the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

I.

Defendant's apparent involvement in a conspiracy to distribute cocaine led to his arrest and trial. The investigation began on May 12, 1994, when Albuquerque Police Department Detective Ernie Salcido called Alberto Duran, a suspected drug dealer. Through several conversations between May 12 and May 21, Salcido arranged with Duran to purchase one kilogram of cocaine. Salcido recorded many of these conversations.

On May 13, Salcido set up a meeting with Duran at a McDonald's restaurant. Duran was driving a white pickup truck with a primer-gray door. Later, they agreed to a price of $23,000 for one kilogram of cocaine. At a meeting at another McDonald's restaurant, Duran showed Salcido a sample of the cocaine. Salcido's partner, James Torres, played the role of Salcido's money man, and brought cash to show Duran. Duran explained that his suppliers brought a load of cocaine every Thursday. Sometimes Duran referred to his suppliers in the plural, and sometimes in the singular. At one point Duran offered to let Salcido meet the owners of the cocaine, but Salcido declined in order to build up Duran's trust.

Around noon on May 20, Salcido met Duran in the American Furniture parking lot. Duran got into Salcido's pickup truck and directed him to the deal's location, the parking lot at Piedra Lisa Canyon Park, at the foot of the Sandia Mountains. Salcido agreed to meet Duran at the park at 5 p.m. to complete the transaction. Duran arrived by himself in his white pickup and explained that the owners of the cocaine were nervous and wanted to push the deal back to the next day.

Duran paged Salcido the next morning, and they agreed to meet at 1 p.m. on May 21 at Piedra Lisa Canyon. They also agreed that they could each bring one additional person to the meeting. Salcido arranged for surveillance by Detectives Patricio Ruiloba and John Bauer, who parked at the north end of the parking lot. Duran parked his white truck in the southeast corner of the parking lot. He brought a passenger, Sergio Gonzales. Both were standing outside Duran's truck. Next to the truck, backed into the space, was a blue Jeep Cherokee. The hatch was open, and Victor Chavez and Defendant were sitting on the back of the jeep. All four men looked up when Salcido arrived. The officer's partner, Torres, drove a yellow Monte Carlo and parked at the north end.

Duran approached Salcido, who asked about the two additional men. Duran leaned over and whispered so the other men would not hear, explaining that they were the owners of the cocaine and they came to make sure they did not get

-3-

"ripped off." Salcido asked to see the cocaine. Duran walked to the back of the jeep. Either Chavez or Defendant reached into the jeep and pulled out a one-kilo brick of cocaine and handed it to Duran, who stuffed it under his shirt. Duran brought the brick to Salcido, who summoned the surveillance officers to begin the arrests.

The surveillance officers searched the jeep and found three additional bricks. The cocaine was tightly wrapped in tape labeled "Gucci" and stored in a black plastic garbage bag inside a box from a small kitchen appliance. None of the bricks of cocaine had fingerprints from Duran, Gonzales, Chavez, or Defendant. The jeep contained documents identifying the owner as the girlfriend of Chavez. Chavez is Defendant's cousin. Duran, Gonzales, and Chavez carried items such as cellphones, beepers, large amounts of cash, and small amounts of drugs, while Defendant did not.

A grand jury handed down a three-count indictment for: (1) conspiracy in violation of 21 U.S.C. § 846, (2) possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(b)(1)(B), and (3) distribution of 500 grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B). Defendant's case was tried separately before a jury.

Before trial, Defendant filed a motion in limine to exclude Duran's statement that Defendant was one of the owners of the cocaine. On the morning

-4-

of the first day of trial, the district court heard the Government describe what the evidence would be. Defense counsel argued that the Government could not show that Defendant was a participant in the conspiracy. The district court indicated that the Government's description of the evidence was sufficient to support the admission of the co-conspirator's statement, but deferred making findings until after the Government presented evidence of the conspiracy. See United States v. Gonzalez-Montoya, 161 F.3d 643, 649 (10th Cir. 1998), cert. denied, 526 U.S. 1033 (1999) (although the preferred procedure is for the district court to hold a James hearing, see generally United States v. James, 590 F.2d 575 (5th Cir. 1979), the district court may also provisionally admit the statement with the caveat that the offering party must prove the existence of the predicate conspiracy through trial testimony or other evidence). At the beginning of the second day of trial, the district court made the following findings: (1) a conspiracy existed, (2) the declarant and the Defendant were members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy. (Tr. at 156.)

Defendant also moved for a judgment of acquittal under Fed. R. Crim. P. 29, arguing that the evidence was insufficient to support a conviction on any of the three counts. Defendant made the motion first at the close of the Government's case, then renewed it after the district court read the instructions to

the jury. (Tr. at 211, 257.) The district court denied the motion, finding: "[T]he evidence [is] sufficient to convict the defendant beyond a reasonable doubt. There would be circumstantial evidence. There was also direct evidence of his presence there and what was in the car, and I find that to be sufficient that he could be convicted." (Tr. at 213.)

Defendant elected not to testify. The jury convicted Defendant of all three counts. The district court sentenced Defendant to 51 months imprisonment on each count, to run concurrently. Defendant filed a motion for new trial under Fed. R. Crim. P. 33, which the district court summarily denied.

II.

Admitting Duran's out-of-court statements, Defendant argues, was error because the testimony of the Government's witnesses did not establish that Defendant was a member of the conspiracy. We review the district court's decision to admit co-conspirator's statements for an abuse of discretion. United States v. Eads, 191 F.3d 1206, 1210 (10th Cir. 1999), cert. denied, No. 99-6907, 2000 WL 743827 (U.S. June 12, 2000). We review the district court's preliminary factual findings for clear error. United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996).

Under Fed. R. Evid. 801(d)(2)(E), co-conspirator statements are not considered hearsay and may properly be admitted if the Government shows by a

preponderance of the evidence that (1) a conspiracy existed, (2) both the declarant and the defendant were members of the conspiracy, and (3) the declarant made the statement in the course of and in furtherance of the conspiracy. Eads, 191 F.3d at 1210; see also Bourjaily v. United States, 483 U.S. 171, 176 (1987) (noting that preliminary facts require proof by a preponderance of the evidence). The district court may consider the contents of the out-of-court statement in making these preliminary factual determinations. Bourjaily, 483 U.S. at 178. Linking the defendant to the conspiracy, however, requires some independent evidence besides the co-conspirator's statements, although the independent evidence need not be substantial. Lopez-Gutierrez, 83 F.3d at 1242.

The record supports the district court's preliminary factual finding that Defendant was a member of the conspiracy to distribute cocaine. The district court properly considered Duran's out-of-court statement itself, as well as independent evidence. See id. (noting that courts may rely on the hearsay statement sought to be admitted, "along with independent evidence tending to establish the conspiracy"). In setting up the sale, Salcido and Duran agreed that each could bring one other person. When Salcido arrived, however, four men, including Defendant, turned to face him. Naturally, Salcido asked Duran who the additional men were. Duran indicated that they were the owners of the cocaine who came along to make sure they did not get ripped off. The references to more

-7-

than one owner in the transcripts of Duran's conversations with Salcido, as well as Duran's offer to set up a meeting between Salcido and the owners, also support the inference that Defendant was one of the owners. Under these circumstances, the district court did not abuse its discretion in admitting the co-conspirator's statement.

III.

Defendant also appeals the district court's denial of his motion for judgment of acquittal, arguing that the Government presented insufficient evidence to find him guilty beyond a reasonable doubt of all three counts in the indictment: conspiracy, possession of cocaine with intent to distribute, and distribution of cocaine. We review de novo the denial of a motion for judgment of acquittal and the sufficiency of the evidence. United States v. McKissick, 204 F.3d 1282, 1289-90 (10th Cir. 2000). The standard is whether any rational factfinder, viewing the evidence and reasonable inferences therefrom in the light most favorable to the prosecution, could find the essential elements of the crime beyond a reasonable doubt. United States v. McDermott, 64 F.3d 1448, 1457 (10th Cir. 1995) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

A.

To support Defendant's conspiracy conviction, the record must show: (1) the existence of an agreement to violate the law, (2) Defendant's knowledge of

the essential objectives of the conspiracy, (3) Defendant's knowing and voluntary participation in the conspiracy, and (4) the conspirators' interdependence. United States v. Anderson, 189 F.3d 1201, 1207 (10th Cir. 1999). Participation requires more than either mere knowledge that drugs are present in the vehicle, presence as a passenger in a vehicle carrying drugs, or association with conspirators known to be involved in a crime. United States v. Jones, 44 F.3d 860, 865-66 (10th Cir. 1995).

Based on the record before us, a reasonable jury could conclude that Defendant was guilty of conspiracy as charged. As discussed above, Duran's out-of-court statement that Defendant was one of the owners of the cocaine establishes Defendant's participation in the conspiracy. In addition to that evidence, we may also consider Defendant's presence in the jeep with four kilograms of cocaine. Also relevant is Defendant's association with Duran, whose efforts to sell cocaine to Salcido are extensively documented in the taped recordings.

B.

To establish the counts of possession and distribution in violation of 21 U.S.C. § 841(b)(1)(B), the Government must prove that Defendant: (1) possessed the controlled substance, (2) knew he possessed the controlled substance, and (3) intended to distribute or dispense the controlled substance. McKissick, 204 F.3d

at 1291 (interpreting 21 U.S.C. § 841(a)(1)).  Possession may be actual or constructive.  Id.  Constructive possession may be joint among several individuals and may be established by circumstantial evidence.  Id.  Constructive possession occurs when the defendant knowingly has ownership, dominion, or control over the narcotics and the premises where the narcotics are found.  Id.  In cases involving joint occupancy of a place where narcotics are found, dominion or control over the place is not sufficient; the Government must also present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband.  Id.  In addition, a defendant is guilty of aiding and abetting if he (1) wilfully associated himself with the criminal venture and (2) sought to make the venture succeed through some action of his own.  Anderson, 189 F.3d at 1207.  Circumstantial evidence may establish participation, and the level of participation may be relatively little.  Id.

Defendant argues that the record does not establish the element of possession.  To the contrary, the detectives' testimony shows that both Defendant and Chavez had constructive possession of the jeep containing the drugs.  While sitting on the back of the jeep, Defendant had access to the box containing the cocaine bricks.  One man, either Defendant or Chavez, handed a brick of cocaine to Duran to deliver to Salcido.  The evidence individually linking Defendant to

the drugs is Duran's statement that Defendant was one of the owners of the cocaine.

In addition, the record supports a theory of aiding and abetting.  If the jury accepted Duran's statement that Defendant was one of the owners of the cocaine, then they could infer that he wilfully associated himself with the criminal venture.  Likewise, they could infer from Duran's statement that Defendant came to the scene of the transaction to make sure the venture succeeded.  Accordingly, the record contains sufficient evidence to allow a reasonable jury to conclude that Defendant aided and abetted the offenses of possession with intent to distribute and distribution.

AFFIRM ED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge