**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 16, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DETREK MANCHEL TUCKER,

      Defendant-Appellant.

No. 11-6132
(D.C. No. 5:10-CR-00056-F-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **EBEL**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Detrek Manchel Tucker appeals from his criminal conviction of six drug-related charges, and two felon-in-possession of a firearm and ammunition charges. On appeal, he argues that the district court erred in refusing to sever the indictment's drug-related counts from the felon-in-possession of a firearm and ammunition counts because there was no nexus between the two sets of counts. Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM** the judgment of the district court.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

# I

The events leading up to Mr. Tucker's conviction were related to the FBI's multi-year investigation of an Oklahoma City gang—the "107 Hoover Crips." As part of this investigation, the FBI conducted surveillance of Robert Pearson, who was suspected of dealing drugs. This surveillance included making video recordings of the goings-on at an automotive repair shop owned by Mr. Pearson, and setting up a wiretap on Mr. Pearson's phone. The FBI discovered that Mr. Pearson sold crack cocaine from this auto shop.

Mr. Pearson subsequently became a government cooperating witness, and he and another cooperating witness, Jacqueline Lewis, testified at Mr. Tucker's trial and linked him to numerous crack cocaine purchases that occurred at the auto shop. Ms. Lewis further testified that at least two of these narcotics purchases occurred when Mr. Tucker had what appeared to be a firearm with him. The FBI's video recordings from the auto shop, and the wiretap conversations from Mr. Pearson's phone, together corroborated testimony that Mr. Tucker visited the auto shop at various times for what appeared to be the purchase of drugs.

More specifically, Ms. Lewis testified that she bought drugs from Mr. Pearson and at some point she told Mr. Tucker about Mr. Pearson's activities as a drug dealer. After learning this, Mr. Tucker asked Ms. Lewis to purchase crack cocaine for him from Mr. Pearson. Ms. Lewis agreed to do so, and the two traveled together to the auto shop on four separate occasions in August 2009;

there, Ms. Lewis purchased a total of seventeen grams of crack cocaine with money that Mr. Tucker provided to her.

During the first of these visits to the auto shop to buy cocaine, Ms. Lewis saw a black firearm on the floor of Mr. Tucker's beige, two-door Buick. On the second visit, Mr. Tucker drove the same Buick, and Ms. Lewis saw the imprint of a firearm in Mr. Tucker's waistband. And, at some point during that August, Ms. Lewis saw Mr. Tucker pull a different, longer firearm from the trunk of his Buick.

Mr. Pearson confirmed at trial that Ms. Lewis bought crack cocaine from him at the auto shop, and he understood that the larger quantities that she purchased would be provided to a third-party. Mr. Pearson further testified that Mr. Tucker had directly purchased cocaine from him on multiple occasions at the auto shop.[1]

In early September 2009, investigators intercepted a phone call between Mr. Tucker and Mr. Pearson. Later that same day, investigators observed Mr. Tucker stop at the auto shop in his "tan two-door Buick." R., Vol. 3, at 373–74 (Tr. of Jury Trial Proceedings, dated Dec. 7 & 8, 2010) (Test. of Clint Dellinger). Suspecting that Mr. Tucker had just purchased drugs at the auto shop, local police pulled Mr. Tucker over after he left the auto shop and failed to use his turn signal.

---

[1] As part of this testimony, Mr. Pearson described two FBI-recorded conversations that he had with Mr. Tucker during which he reportedly discussed with Mr. Tucker the idea of Mr. Tucker coming by the auto shop to purchase drugs.

The police brought a drug-sniffing dog to the scene, and the dog signaled the presence of drugs inside Mr. Tucker's vehicle. However, during the subsequent search, no drugs were found. Instead, the police found a lone shotgun shell and 130 handgun rounds. The police seized the ammunition and released Mr. Tucker.

Sixteen days later, a different local police officer was in the parking lot of a Family Dollar store when she noticed Mr. Tucker standing by the open trunk of his "beige[] Buick." R., Vol. 3, at 450 (Test. of Dawn Davis). The officer became suspicious of Mr. Tucker after he made eye contact with her and then quickly drove off. The officer followed Mr. Tucker, and she stopped him after he failed to signal a turn. Upon learning that Mr. Tucker's driver's license was suspended, she arrested him. An inventory search of his vehicle yielded, *inter alia*, a .12-gauge shotgun and five shotgun shells.

The grand jury returned an eight-count indictment against Mr. Tucker, charging him with two counts of using a telephone to facilitate the purchase of cocaine (Counts 1 and 4), in violation of 21 U.S.C. § 843(b); four counts of possession of crack cocaine with intent to distribute (Counts 2, 3, 5, and 8), in violation of 21 U.S.C. § 841(a)(1); and one count of felon-in-possession of ammunition (Count 6), and one count of felon-in-possession of a firearm and ammunition (Count 7), both counts in violation of 18 U.S.C. § 922(g)(1).

Before trial, Mr. Tucker filed a motion to sever the drug-related counts from the felon-in-possession of a firearm and ammunition counts, under Federal

Rules of Criminal Procedure 8 and 14. Mr. Tucker argued to the district court that "no nexus exists" between the felon-in-possession of a firearm and ammunition counts and the drug-related counts contained in the indictment. R., Vol. 1, at 24–25 (Mot. for Severance of Counts, filed Mar. 18, 2010). The government responded that Mr. Tucker possessed a firearm and ammunition "during the course of the alleged conduct"—providing a connection between all the counts in the indictment—and joinder benefitted judicial economy. *Id.* at 38 (Government's Combined Resp. to Def.'s Mot to Supp. & Mot. for Severance, filed Nov. 15, 2010).

The district court ultimately denied Mr. Tucker's motion to sever. During a hearing on, *inter alia*, that motion, the district court noted that Ms. Lewis's testimony was credible regarding Mr. Tucker having a gun with him during certain drug transactions. The court then found that as a drug dealer, Mr. Tucker's drug-related activities alleged in the indictment were related to Mr. Tucker's conduct specified in the indictment concerning his possession of a firearm and ammunition. After weighing, on the one hand, the strength of the relationship between the drug-related counts and the felon-in-possession of a firearm and ammunition counts, along with considerations of judicial economy, against, on the other hand, any possible prejudicial effect of the joinder of all

counts of the indictment, the district court denied the motion. Mr. Tucker then proceeded to trial, where a jury returned a verdict of guilty on all eight counts. This timely appeal followed.

## II

Mr. Tucker brings a single challenge to his convictions on appeal. He argues that the district court erred in denying his motion for severance of his drug-related counts (1–5 and 8) from his felon-in-possession of a firearm and ammunition counts (6 and 7). More specifically, Mr. Tucker asserts that the district court should have severed these counts under Federal Rule of Criminal Procedure Rule 14(a).[2] Therefore, we must determine if the counts should have been severed due to any resulting prejudice. We review the district court's refusal to sever the drug-related counts from the felon-in-possession of a firearm and ammunition counts for an abuse of discretion. *See United States v. Hutchinson*, 573 F.3d 1011, 1025–26 (10th Cir. 2009); *United States v. Olsen*, 519 F.3d 1096, 1102–03 (10th Cir. 2008).

Rule 14(a) states, in relevant part: "If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . the court may order separate

---

[2] Mr. Tucker's brief, without much analysis, also invokes a challenge under Federal Rule of Criminal Procedure 8—that *joinder* of the counts was improper. *See* Aplt. Opening Br. at 17–18. However, at oral argument counsel conceded that there was "not a good Rule 8 issue" and acknowledged that before us was only a challenge related to the denial of the motion for severance—*viz.*, the theory that the district court abused its discretion in refusing to sever the counts under Rule 14(a). *See* Oral Argument at 3:39–4:51.

trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Before the district court, Mr. Tucker had the burden to show that "the denial of severance would result in 'actual prejudice' to his defense, . . . and that this prejudice would 'outweigh' the expense and inconvenience of separate trials." *Hutchinson*, 573 F.3d at 1025 (citations omitted). In analyzing the district court's denial of severance, we keep in mind that "[w]hether to grant severance under Rule 14 rests within the discretion of the district court and the burden on defendant to show an abuse of discretion in this context is a difficult one." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997) (quoting *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995)) (internal quotation marks omitted).

Mr. Tucker cannot show that the district court abused its discretion in refusing to sever the drug-related counts from the felon-in-possession of a firearm and ammunition counts. He asserts that he suffered prejudice for two related reasons: first, because Mr. Tucker's drug-related convictions relied on the weak testimony of two cooperating witnesses that both had credibility problems; and, second, if it were not for the evidence presented regarding Mr. Tucker being "a previously convicted felon in possession of a firearm and ammunition," the jury would have acquitted him or at least been unable to reach a verdict on the drug-related counts. Aplt. Opening Br. at 15–16.

There are at least two problems with Mr. Tucker's arguments. First, contrary to Mr. Tucker's characterization of the evidence as weak, his drug-related convictions are supported by detailed testimony from the government's two cooperating witnesses, describing multiple drug buys at the auto shop, and this testimony was corroborated by video-recording and wiretap evidence. Thus, it does not follow at all from this evidentiary presentation that a reasonable factfinder would have been unable to reach a finding of guilt on Mr. Tucker's drug-related counts, but for those counts being joined with Mr. Tucker's felon-in-possession of a firearm and ammunition counts.[5]

Moreover, in any separate trial on the drug-related counts, the jury would almost certainly have been presented with most—if not all—of the evidence that

---

[5] Mr. Tucker argues that during deliberation, the jury "was unable to reach a unanimous verdict on all counts," requiring a "modified *Allen* charge." Aplt. Opening Br. at 15. He uses this alleged fact to support his argument that the case was so close that surely he would have been acquitted of his drug-related charges without the jury knowing that he was a previously convicted felon-in-possession of a firearm and ammunition. However, the jury did not actually state that they were "unable . . . to reach a unanimous verdict"—they asked what would happen *if* they were "not unanimous on one or more of the individual counts." R., Vol. 1, at 90 (Note from Juror to the Dist. Ct., dated Dec. 8, 2010). We do not believe that the record supports the inference that the jury's knowledge of Mr. Tucker's previous felony or charged firearm and ammunition offenses had a material impact on its drug-count deliberations. Reaching this conclusion would require us to engage in pure speculation and conjecture; we decline to do this. *Cf. United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004) ("[A] mere allegation that defendant would have a better chance of acquittal in a separate trial is not sufficient to warrant severance." (alteration in original) (quoting *United States v. Powell*, 982 F.2d 1422, 1432 (10th Cir. 1992)) (internal quotation marks omitted)).

Mr. Tucker possessed a firearm and ammunition because it would have been part and parcel of the government's proof of Mr. Tucker's drug-related conduct.  *See United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) ("If the contested evidence is intrinsic to the charged crime, then Rule 404(b) is not even applicable[; o]f course, such evidence remains 'subject to the requirement of [Federal Rule of Evidence] 403 that its probative value is not substantially outweighed by the danger of unfair prejudice.'" (second alteration in original) (citation omitted) (quoting *United States v. Lambert*, 995 F.2d 1006, 1007–08 (10th Cir. 1993))); *cf. United States v. Hollis*, 971 F.2d 1441, 1447 (10th Cir. 1992) (finding no abuse of discretion where, "had separate trials been granted, the evidence of similar conduct would likely have been admissible anyway under Fed. R. Evid. 404(b)").   In other words, he "has not demonstrated actual prejudice resulting from a single trial."  *Johnson*, 130 F.3d at 1427; *see United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999).

Second, Mr. Tucker's arguments fail because, even if we were to assume that Mr. Tucker suffered *some* appreciable prejudice, we would conclude that this prejudice was not sufficient to outweigh the inconvenience and expense of a separate trial, *see United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994), particularly in light of the steps taken by the district court to ameliorate any possible prejudice by providing the jury with limiting instructions, *see Hutchinson*, 573 F.3d at 1026 ("[L]imiting instructions are ordinarily sufficient to

cure potential prejudice." (quoting *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996)) (internal quotation marks omitted)).

As an initial matter, we would be hard-pressed to conclude that the import of any such prejudice could be anything more than modest on facts such as these—where at the very least the lion's share of the evidence of Mr. Tucker's firearm and ammunition possession would likely have been admitted as intrinsic to the proof regarding Mr. Tucker's drug-related counts. *See, e.g.*, *Irving*, 665 F.3d at 1212. Furthermore, the firearm evidence also likely would have been admissible in any event as probative of Mr. Tucker's intent to possess crack cocaine with intent to distribute. *See, e.g.*, *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) (noting that, *inter alia*, firearms are "'tools of the trade'—that is, means for the distribution of illegal drugs"). And precisely because evidence relating to the firearm and ammunition counts would have been present in any event in the trial of the drug-related counts, there were significant efficiency gains from trying the firearm and ammunition counts along with the drug-related counts. We previously have recognized that such considerations justified the denial of severance. *See United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008) (holding that denial of a motion for severance was not an abuse of discretion where "[e]ven if the counts had been severed, evidence of Defendant's firearm possession would have been admissible to prove [the drug count]").

Finally, still operating on the assumption that Mr. Tucker experienced some appreciable prejudice, we note that "Rule 14 . . . leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). And the district court here provided such tailored relief in the form of limiting instructions, which were "sufficient to cure potential prejudice." *Hardwell*, 80 F.3d at 1487; *see Zafiro*, 506 U.S. at 540–41. Among other things, these instructions directed the jury to separately consider the evidence concerning the distinct counts of the indictment and admonished the jurors to not permit their verdict concerning one count to control their verdict concerning any of the other counts of the indictment.[6] Furthermore, the district court specifically instructed the jury that Mr. Tucker was "not on trial for any act, conduct, or crime not charged in the indictment," R., Vol. 1, at 74 (Instruction

---

[6] Specifically, the referenced instruction—Instruction No. 21—stated:

### INSTRUCTION NO. 21
### COUNTS ARE SEPARATE CRIMES

You are instructed that a separate crime or offense is charged in each count of the indictment. Each crime or offense as charged, and the evidence applicable thereto, should be considered separately, and a verdict of guilty or not guilty as to each count should likewise be considered separately. Of course, some evidence may pertain to more than one count.

The fact that you may find a defendant guilty or not guilty as to the crime charged in one count should not control your verdict with reference to the other counts.

R., Vol. 1, at 73 (Instruction No. 21, filed Dec. 7, 2010).

No. 22, filed Dec. 7, 2010), thereby effectively minimizing the possibility that the jury might consider the fact of Mr. Tucker's prior felony in its deliberations concerning the drug-related counts.[7]

We underscore that "[a] central assumption of our jurisprudence is that juries follow the instructions they receive." *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998). Consequently, with confidence, we conclude that these jury instructions were sufficient to cure any prejudice that Mr. Tucker may have suffered from having all of his crimes tried together. *See, e.g.*, *Zafiro*, 506 U.S. at 541 (endorsing the district court's use of a curative instruction to ameliorate ordinary prejudice); *Hutchinson*, 573 F.3d at 1026 (applying *Zafiro*).

---

[7] In pertinent part, Instruction No. 22 provides:

### INSTRUCTION NO. 22
### CAUTION - CONSIDER ONLY CRIME CHARGED

You are here to decide whether the government has proven beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.

R., Vol. 1, at 74.

## III

For the foregoing reasons, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge