46 F.3d 1152
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Douglas Dean FAIRCHILD, Defendant-Appellant.
 No. 93-3090.
 United States Court of Appeals, Tenth Circuit.
 Jan. 12, 1995.
 
 1
 Before BALDOCK and EBEL, Circuit Judges, and CARRIGAN, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 CARRIGAN, District Judge.
 
 
 4
 Appellant Douglas Dean Fairchild was convicted of conspiring to distribute cocaine in violation of 18 U.S.C. Secs. 841(a)(1) and 846, presenting a false affidavit to the Internal Revenue Service (IRS) in violation of 18 U.S.C. Sec. 1001, and filing false income tax returns for the years 1987 and 1988 in violation of 26 U.S.C. Sec. 7206(1). Appellant appeals his convictions, arguing that: (1) his Sixth Amendment rights were violated because the district court prevented him from fully cross-examining government witnesses and presenting the witnesses of his choice; (2) the district court erred in denying his motion for severance; and (3) there was insufficient evidence upon which to base a conviction. We affirm.
 
 
 5
 I. FACTUAL BACKGROUND.
 
 
 6
 The indictment alleged that Douglas Fairchild, Chris Fairchild, and Deborah Ann Peet conspired to sell cocaine to Paul Day between September 1987 and March 1991, utilizing the following scheme: Mr. Day wrote checks to third parties from his parents' business, Day Cattle Company, and delivered them to the appellant. Appellant deposited the checks in his personal bank account or the account of a car repair business he owned with Mr. Chris Fairchild. Alternatively, the checks were given to Ms. Peet who deposited them in her personal account. The funds then were withdrawn and returned to Mr. Day, who used them to pay for cocaine. Neither the Fairchilds nor Ms. Peet had any relationship with the payees, nor were they authorized to negotiate instruments on behalf of the payees.
 
 
 7
 The FBI and the IRS became aware of this scheme and conducted an investigation that focused on Mr. Day. During questioning, Mr. Day admitted that the proceeds of the checks had been used to pay for cocaine he had purchased from the appellant. He also agreed to cooperate with the investigators in gathering evidence against Ms. Peet and the Fairchilds. During the fall of 1990 and early spring of 1991, Mr. Day secretly tape recorded conversations in which the appellant admitted providing cocaine to Mr. Day and Ms. Peet admitted laundering money.
 
 
 8
 II. ADMISSIBILITY OF EXCULPATORY EVIDENCE.
 
 
 9
 A. Exclusion of Defense Witnesses.
 
 
 10
 At trial, the appellant attempted to present a defense that, at most, he had laundered money for Mr. Day so that Mr. Day could support his lavish lifestyle. Appellant subpoenaed Lavaughn Newsom and Gary Doud to testify that they also had cashed third-party checks for Mr. Day, but that no cocaine had been involved. The district court refused to allow this testimony, ruling it not material.[1] Appellant here asserts that this ruling prohibited him from presenting a defense and thus violated the Sixth Amendment.
 
 
 11
 Evidentiary rulings are reviewed for abuse of discretion. United States v. Temple, 862 F.2d 821, 822 (10th Cir.1988). To establish a Sixth Amendment violation, the appellant must show that the proffered testimony was material and favorable to his defense.[2] United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).
 
 
 12
 First, the appellant argues that Mr. Newsom's and Mr. Doud's testimony was material and favorable to his defense because it would have impugned Mr. Day's credibility. If offered for that purpose, however, it was merely cumulative of other evidence showing that Mr. Day was a liar, forger, thief, gambler, drug abuser and drunk. Mere failure to admit cumulative evidence does not violate the Sixth Amendment. United States v. Swingler, 758 F.2d 477, 497-98 (10th Cir.1985).
 
 
 13
 Second, the appellant asserts that the testimony at issue should have been admitted pursuant to Fed.R.Evid. 406 as evidence of Mr. Day's habits. However, stealing money through check forgery cannot become a semi-automatic act; thus it does not constitute a habit under that rule.[3] Cf. United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir.1987) (extortion or refraining from extortion does not constitute habit).
 
 
 14
 Finally, the appellant argues that the fact that Messrs. Newsom and Doud had cashed checks for Mr. Day without exchanging drugs is relevant to show that no drugs were involved in the Fairchild/Peet check-cashing scheme. The check cashing by Mr. Newsom and Mr. Doud, however, occurred at different times and involved different checks from those charged in the indictment. Moreover, the government maintains that some of the transactions between Messrs. Day and Newsom did involve cocaine. In fact, Mr. Doud and Mr. Newsom were under investigation at the time of trial.
 
 
 15
 The district court has broad discretion to limit testimony that is collateral to the issues charged in the indictment. United States v. Scopo, 861 F.2d 339, 345 (2d Cir.1988), cert. denied, 490 U.S. 1048 (1989). Further, "[t]o permit defense counsel to elicit detailed facts about a witness' past criminal activity in unrelated crimes could impair the government's investigation and trial of criminal cases involving that activity." United States v. Hirst, 668 F.2d 1180, 1184 (11th Cir.1982). We conclude that the trial court did not abuse its discretion in excluding Mr. Doud's and Mr. Newsom's testimony as immaterial, nor did the court's ruling on this evidence violate the Sixth Amendment.
 
 
 16
 B. Inability to Cross-Examine Witnesses.
 
 
 17
 Appellant complains that he was not allowed to cross-examine Mr. Day fully regarding Mr. Day's purchases of cocaine from three persons other than the defendants.
 
 
 18
 The right to cross-examine a witness is implicit in the right of confrontation. Chambers v. Mississippi, 410 U.S. 284, 295 (1973); Smith v. Illinois, 390 U.S. 129, 131 (1967). The district court may limit cross-examination, however, where the questions are irrelevant, Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986), or cumulative. United States v. Williams, 963 F.2d 1337, 1340 (10th Cir.1992).
 
 
 19
 The proffered testimony was relevant only to Mr. Day's credibility. As discussed above, Mr. Day's credibility was thoroughly attacked through other avenues of inquiry, rendering any further such examination redundant. Thus, we conclude that the district court did not err in limiting the appellant's cross-examination of Mr. Day.
 
 
 20
 III. DENIAL OF MOTION TO SEVER.
 
 
 21
 Prior to trial the appellant moved to sever the trial of his case, asserting that during interviews with the FBI, his codefendants had made statements that incriminated him. The district court denied this motion.
 
 
 22
 A district court's denial of a motion to sever is reviewed for abuse of discretion. United States v. Peveto, 881 F.2d 844, 857 (10th Cir.), cert. denied, 493 U.S. 943 (1989). In deciding a motion to sever, the court must weigh the prejudice to a defendant from a joint trial against considerations of economy and expedition of judicial administration in the event separate trials are required. Id. It is not sufficient that the appellant show that severance would have increased his chances of acquittal; he must show that failure to sever denied him the right to a fair trial. Id.
 
 
 23
 In his motion to sever, the appellant relied on Bruton v. United States, 391 U.S. 123 (1968). In Bruton, the district court had admitted a nontestifying codefendant's confession implicating the defendant. Id. at 136. Because the codefendant chose not to take the stand, the defendant was not able to cross-examine him. Id. The instant case is distinguishable because here both Mr. Chris Fairchild and Ms. Peet testified. Thus, the appellant had an opportunity to cross-examine each of his codefendants.
 
 
 24
 Appellant also contends that he was denied his right to a presumption of innocence when the district court failed to grant his motion for severance. He argues that when his codefendants implicated him in the drug distribution conspiracy, the government's burden of proving guilt beyond a reasonable doubt was transferred to him, and he was saddled with the burden of proving his innocence. The fact that codefendants present defenses that are mutually antagonistic does not transform the government's burden, nor does it mandate severance. Zafiro v. United States, 113 S.Ct. 933 (1993). Thus, we reject the appellant's contention on this issue.
 
 
 25
 IV. SUFFICIENCY OF THE EVIDENCE.
 
 
 26
 Appellant asserts that there was insufficient evidence to support his convictions on the conspiracy charge and on the tax fraud charges.
 
 
 27
 A conviction will be affirmed when direct and circumstantial evidence, together with reasonable inferences that may be drawn from that evidence, when viewed in the light most favorable to the government, would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. United States v. Grimes, 967 F.2d 1468, 1472 (10th Cir.), cert. denied, 113 S.Ct. 355 (1992). A district court's determination as to the sufficiency of the evidence is reviewed de novo. Id.
 
 
 28
 Mr. Day testified that he had purchased cocaine from the appellant. Tapes containing incriminating statements by the appellant and Ms. Peet were played at trial. An IRS agent also testified that during interviews with the FBI and IRS, the appellant had admitted that Mr. Day had given him checks in exchange for cocaine. Thus we conclude that there is sufficient evidence in the record to support the conspiracy conviction.
 
 
 29
 We further conclude that there is sufficient evidence to support the tax fraud convictions. During trial, the appellant admitted that he had created false invoices for his car repair shop in order to hide the Day Cattle Company check deposits from his accountant. He also testified that he had been concerned about the "story" he was going to tell the IRS after Mr. Day admitted that he had purchased drugs with the checks that had been deposited in the appellant's business account. Thus, we conclude that the district court did not err when it found that there was sufficient evidence on which to base the appellant's tax fraud convictions.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Honorable Jim R. Carrigan, United States District Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Appellant contends that he was denied the opportunity to call Mr. Newsom and Mr. Doud as defense witnesses. In fact, the district court did not deny compulsory process but simply sustained the government's objections to evidence of transactions outside the scope of the indictment
 
 
 [2]
 Error alone does not require reversal. Chambers v. Mississippi, 410 U.S. 284, 298 (1973). Rather the court must look at the ultimate impact of the error when viewed in conjunction with the trial court's refusal to permit the defendant to call other witnesses. Id
 
 
 [3]
 The Advisory Committee notes to Rule 406 state in pertinent part:
 A habit ... is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.