**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 12 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JACQUELINE DALLESE MORRIS,
a/k/a Jacqueline Dantzler,

     Defendant - Appellant.

No. 01-5034
(D.C. No. 00-CR-80-B)
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **MCWILLIAMS**, Senior Circuit Judge, and
**STAGG**[**], District Judge.[***]

After a jury trial, Jacqueline Dallese Morris was convicted of obstruction of

correspondence in violation of 18 U.S.C. § 1702, uttering a forged security in

violation of 18 U.S.C. § 513, and false use of a social security number in

violation of 42 U.S.C. § 408(a)(7)(B). The district court sentenced Mrs. Morris to

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Tom Stagg, Senior District Judge, United States District
Court for the Western District of Louisiana, sitting by designation.

[***] We grant the joint motion of the parties to waive argument and have this
matter submitted on the briefs. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).

five years probation on each of the counts, to run concurrently. In this appeal, Mrs. Morris attacks the district court's ruling on (1) the admissibility of several items of evidence that she sought to have admitted, (2) her objection to the Government's rebuttal witness, and (3) her Batson challenge to the Government's peremptory strike against an African-American juror. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

Background

In September of 1999, Mrs. Morris and her husband Darryl Morris rented a house to Ms. Latahra Smith. From all accounts, the relationship between Ms. Smith and Mr. and Mrs. Morris rapidly deteriorated. On November 1, 1999, Mr. and Mrs. Morris began eviction proceedings against Ms. Smith for operating a day care center at the house, not paying rent, and damaging the property. On November 30, 1999, a default judgment was entered against Ms. Smith for $4,500.00 for unpaid rent and damages. Ms. Smith moved out of the house the same day.

A few days later, three letters that appeared to contain checks and addressed to Ms. Smith were delivered to the house. In fact, all three letters were checks from the Oklahoma Department of Health and Human Services ("DHS") and were payable to Ms. Smith in the amounts of $33, $1,275, and $2,083. Mrs.

Morris alleges that she called Ms. Smith, they argued about the money owed, and Ms. Smith said that she could do whatever she wanted with the checks.

On December 8, 1999, Mrs. Morris cashed the $33 check at a National Check Cashers in Tulsa, Oklahoma. In order to get National Check Cashers to allow her to cash the check, Mrs. Morris pretended to be Ms. Smith, using her social security number and forging her name. Mrs. Morris also supplied telephone numbers of people that she had previously contacted that could confirm her false identity.

On December 9, 1999, Mrs. Morris took the two remaining checks to Muskogee Federal Credit Union where she had a checking account. Mrs. Morris forged Ms. Smith's signature on the back of the two checks and on a new signature card for the account so that she could deposit the checks in her account. During the next four days, Mrs. Morris withdrew the amount of the two checks from the account.

Ms. Smith informed DHS that she did not receive the checks and was told that the two larger checks had been cashed at Muskogee Federal Credit Union. Ms. Smith proved to the Credit Union that she had not endorsed the two checks and was paid the amount of the checks. She denied both having spoken to Mrs. Morris about the checks and having given permission for Mrs. Morris to cash them.

Discussion

A. Evidentiary Issues

We review the trial court's evidentiary rulings for abuse of discretion. United States v. Tan, 254 F.3d 1204, 1207 (10th Cir. 2001). Under this standard, we will not disturb a trial court's decision unless we have a definite and firm conviction that the trial court exceeded the bounds of permissible choice in the circumstances. United States v. Talamante, 981 F.2d 1153, 1155 (10th Cir. 1992).

Mrs. Morris claims that the trial court erred "in refusing [her] evidence of 404(a)(2) bad character of the victim." Aplt. Br. at 4 (referring to Fed. R. Evid. 404(a)(2)). In her brief, Mrs. Morris lists 39 specific instances of prior bad conduct by Ms. Smith which Mrs. Morris sought to have admitted into evidence at a pretrial hearing. Id. at 13-25. Mrs. Morris claims that "a large portion" of this evidence was denied by the trial court. Id. at 13. Mrs. Morris fails to note that 10 of the instances listed in her brief were withdrawn by counsel and 22 were ruled admissible at the pretrial hearing. V R. at 13-56.[1] Only the remaining seven instances, which in reality are only six because instances three and thirty are

---

[1] Appellant failed to provide citations to the record in her brief. This would usually result in a waiver of review, United States v. Rodriguez-Aguirre, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997), but the citations provided in the Government's brief cured this defect.

duplicative, Aplt. Br. at 13, 21-22, were excluded at the pretrial hearing. These six instances are: (1) Ms. Smith [then Mrs. Lewis] was found to have breached a partnership agreement in a 1994 civil judgment, id. at 13, No. 3 and at 21-22, No. 30, (2) Ms. Smith was evicted immediately prior to moving into Mr. and Mrs. Morris' house for not paying rent by Mr. Kelly McNew, who was prepared to testify that Ms. Smith lied about everything and could not be trusted, id. at 15, No. 10, (3) Ms. Smith told Mrs. Morris that she had not been previously evicted when she signed the lease, id. at 15, No. 11, (4) Ms. Smith filed a worker's compensation claim in 1993 that was dismissed because she was not eligible as a part owner, id. at 19, No. 26, (5) a felony information was filed against Ms. Smith [under her maiden name Canady] in 1994 for obtaining merchandise by means of bogus checks, id. at 19, No. 27, and (6) Ms. Smith filed a false insurance claim for $10,000.00 in 1993 that was denied, id. at 19, No. 28.

In addition to the six instances of bad conduct excluded at the pretrial hearing, Mrs. Morris asserts that the trial court erred in refusing to permit the testimony of two defense witnesses, Gregory Meir and Barry Lewis, and the introduction of six certified court documents. Aplt. Br. at 31. See VIII R. at 212-14 (proffer); id. at 207 (describing the exhibits). According to the offer of proof, Mr. Meir, Mr. Lewis' attorney, would testify that Ms. Smith had falsely represented in her divorce that her daughter was the child of Mr. Lewis. Mr.

Lewis, Ms. Smith's ex-husband, would testify about the false representation of paternity, the 1993 fraudulent insurance claim, and "other frauds and bad character in general of Latahra Smith." Id. at 213. Of the six excluded exhibits, two dealt with a 1996 misdemeanor conviction for obtaining property by bogus checks, one dealt with a 2000 misdemeanor conviction for bogus checks, two dealt with the misrepresentation of paternity as to Mr. Lewis, and one was never described.[2] Id. at 197, 207.

Mrs. Morris argues that the trial court abused its discretion in excluding the above referenced evidence because it was admissible pursuant to Fed. R. Evid. 404(a)(2) as evidence of a pertinent trait of character of the victim, Fed. R. Evid. 405(b) as an essential element of the defense, Fed. R. Evid. 406 as evidence of habit, Fed. R. Evid. 608(b) as specific instances of conduct of a witness concerning the witness's character for truthfulness or untruthfulness, and Fed. R. Evid. 701 as opinion testimony by a lay witness. Aplt. Br. at 28-34.

As a general rule, evidence of a character trait is not admissible for the purpose of proving that a person acted in conformity with that trait on a particular occasion. Fed. R. Evid. 404(a). There are, however, a number of situations where character evidence is admissible because it is being offered for other

---

[2] Obviously, we are unable to review the admissibility of the undescribed exhibit.

purposes. The grounds for admissibility raised by Mrs. Morris are best grouped according to method of proof: (1) extrinsic evidence of specific instances of conduct to prove a character trait, Rule 405(b) and Rule 406; (2) inquiry about specific instances of conduct on cross-examination for the limited purpose of attacking a witness's credibility, Rule 608(b); and, (3) opinion testimony, Rule 701. It is important to remember that, even if evidence is admissible under one of these rules, it may still be properly excluded under Fed. R. Evid. 402 as irrelevant or under Fed. R. Evid. 403 as prejudicial, confusing, misleading, or cumulative.

(1) Extrinsic evidence of specific instances of conduct.

Fed. R. Evid. 405(b) and 406 allow the introduction of extrinsic evidence of specific instances of conduct. In this case, extrinsic evidence of specific instances of conduct include: the six certified court documents excluded at trial, the testimony of Mr. Meir and Mr. Lewis that Ms. Smith misrepresented the paternity of her daughter, the testimony of Mr. Lewis regarding the attempted insurance fraud, the testimony of Mr. McNew that Ms. Smith failed to pay him rent and lied about being eligible for state housing assistance, and any of the judgments or the information filed against Ms. Smith dealing with the six instances of conduct excluded at the pretrial hearing.

Rule 405(b) allows the admission of proof of specific instances of a person's conduct in "cases in which character or a trait of character of a person is

an essential element of a charge, claim, or defense ...." Fed. R. Evid. 405(b). Because this evidence has the greatest capacity to arouse prejudice, confuse, surprise, and consume time, proof of specific instances of a person's conduct may be used only when character is in issue "in the strict sense." Talamante, 981 F.2d at 1156 (citing Fed. R. Evid. 405 advisory committee's note). Character is directly in issue "in the strict sense" when it is a material fact that under the substantive law determines rights and liabilities of the parties. Perrin v. Anderson, 784 F.2d 1040, 1045 (10th Cir. 1986) (citing Edward W. Cleary, McCormick on Evidence § 187, at 551 (3d ed. 1984)). In such a case the evidence is not being offered to prove that the defendant acted in conformity with the character trait; instead, the existence or nonexistence of the character trait itself determines the rights and liabilities of the parties. Id. (citations omitted). The most obvious example is a defamation action. Whether the plaintiff has the character trait in question itself determines whether the defendant is liable.

Mrs. Morris claims that the evidence of Ms. Smith's character traits for lying, cheating, and defrauding is admissible under Rule 405(b) as an essential element of the defense because "the defendant's theory was that [Ms. Smith] intentionally lied to authorities in order to beat, cheat, and defraud the defendant out of the money that [she] had previously agreed could be endorsed, cashed, and applied to the just debt owed by [Ms. Smith] to the defendant." Aplt. Br. at 31.

We do not agree. Mrs. Morris admitted to opening Ms. Smith's letters and forging Ms. Smith's name and social security number. Her defense was that she had Ms. Smith's permission. Mrs. Morris wanted to introduce evidence of lying, cheating, and defrauding by Ms. Smith for the purpose of proving that Ms. Smith was acting in conformity with these character traits when she denied having given permission to cash the checks. The existence of the character traits of lying, cheating, and defrauding by themselves does not determine the rights and liabilities of the parties. The excluded extrinsic evidence is, therefore, not within the Rule 405(b) exception.

Rule 406 permits evidence of the habit of a person to prove that the conduct of the person on a particular occasion was in conformity with the habit or routine practice. Fed. R. Evid. 406. Although habit evidence is not character evidence, the Tenth Circuit has noted that proving habit may offer a backdoor to proving character because habit and character are closely akin. United States v. Yazzie, 188 F.3d 1178, 1190 (10th Cir. 1999) ("[A]lthough evidence an individual routinely acted in a particular manner may be offered to show he *acted* in conformity on an occasion, those routine practices may also coalesce to provide specific instances proving character."). Habit is defined as "one's 'regular practice of meeting a particular kind of situation with a specific type of conduct.'" Id. (citing Fed. R. Evid. 406 advisory committee's note). Examples

include going down a particular stairway two stairs at a time, giving the hand signal for a left turn, alighting from railway cars while they are still moving, Fed. R. Evid. 406 advisory committee's note; reacting with extreme violence to any contact with a uniformed police officer, Perrin, 784 F.2d at 1046; and placing a gun in your belt every morning, Yazzie, 188 F.3d at 1189.

Mrs. Morris argues that the extrinsic evidence of specific conduct should have been admitted as evidence of habit because "[Ms. Smith], when faced with ... financial adversity, had formed the habit of lying to obtain financial gain." Aplt. Br. at 32. Lying to obtain gain when faced with financial adversity is neither a particular kind of situation nor a specific type of conduct. Additionally, this court has held that stealing money through extortion or check forgery cannot become a semi-automatic act and, thus, cannot constitute a habit under Rule 406. United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987); United States v. Fairchild, No. 93-3090, 46 F.3d 1152, 1995 WL 21608 at *2 (10th Cir. Jan. 12, 1995) (unpublished). We find that the trial court did not abuse its discretion in determining that this was not habit evidence.

Additionally, we find that the exhibits, the testimony of Mr. Meir, and the testimony of Mr. Lewis as to the false representation of paternity are cumulative evidence. Fed. R. Evid. 403. The 1996 and 2000 convictions for bogus checks and the misrepresentation of paternity issues were inquired into by Mrs. Morris'

counsel on cross-examination and were admitted to by Ms. Smith.  IX R. at 434-38.  Extrinsic evidence supporting these admissions would have been cumulative.  Fed. R. Evid. 403; United States v. Magleby, 241 F.3d 1306, 1316 (10th Cir. 2001) (citations omitted) ("Evidence is cumulative if repetitive, and if the small increment of probability it adds may not warrant the time spent in introducing it.").

(2) Specific instances of conduct on cross-examination.

Under Fed. R. Evid. 608(b), "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, ... may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness ...." Rule 608(b), therefore, allows inquiry about specific acts for the sole purpose of supporting or attacking a witness's credibility.

In this case, inquiry evidence would have included any bad act that Mrs. Morris wanted to but was not allowed to ask Ms. Smith about on cross-examination.  As noted above, Ms. Smith was asked about the subject matter of the six excluded exhibits and the misrepresentation of the paternity of her daughter.  Additionally, she was asked about being evicted by Mr. McNew, her prior landlord. IX R. 433-34, 439-40.  Therefore, the only remaining evidence that

was not inquired about on cross-examination were the other five instances excluded at the pretrial hearing: (1) the 1994 civil judgment for breach of partnership agreement, (2) the alleged misrepresentation by Ms. Smith to Mrs. Morris that she had never been evicted, (3) the 1993 dismissal of a workers compensation claim, (4) the 1994 felony information for bogus checks, and (5) the 1993 unsuccessful fraudulent insurance claim.

While the trial court did not fully explain the bases for excluding inquiry into these five instances, it is readily apparent from the context. The breach of partnership was ruled to be "too far afield." V R. at 35-36. As to the other four instances, inquiry was denied unless a certified judgment was produced. V R. at 39-40, 50, 53-54, 54-55, 55-56. We believe that the trial court was relying on Fed. R. Evid. 402 as to the instances excluded for being too far afield or constituting mere allegations and Fed. R. Evid. 403 as to the remaining instances.

Rule 402 makes irrelevant evidence inadmissible. Fed. R. Evid. 402. Rule 403, excludes evidence whose probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. Fed. R. Evid. 403. All five instances were six to seven years old at the time of the trial. (1) The breach of the partnership agreement would have caused confusion and undue delay because of the time required to

explain the details of the civil case. (2) It was established at the pretrial hearing that because the eviction by Mr. McNew was obtained after Ms. Smith signed the first lease, she did not misrepresent having not previously been evicted to Mrs. Morris. V R. at 50.[3] (3) There was no finding of fraud in the dismissal of the workers compensation claim. Given that questioning was permitted regarding obtaining merchandise by bogus check in 1996 and 2000 and bank fraud in 1999, the (4) 1994 information filed against Ms. Smith for writing bogus checks and the (5) unsuccessful insurance fraud seem to clearly be cumulative as well as constituting mere allegations which in and of themselves are not probative of anything. We find that the trial court did not abuse its discretion in excluding inquiry about these five instances during cross-examination.

(3) Opinion testimony.

Rule 701 allows a witness, not testifying as an expert, to give testimony in

---

[3] In Appellant's brief, this instance is described as "[Ms. Smith] told the defendant (Ms. Morris) that she had not been evicted before, and had never been in trouble." Aplt. Br. at 15. At the pretrial hearing, the court ruled that if Mrs. Morris had certified copies of evictions prior to the signing of the lease Ms. Smith could be questioned about the misrepresentation. V R. at 45. The court excluded the eviction by Mr. McNew because the eviction became final after Ms. Smith signed the first lease. Id. at 50. Mrs. Morris' counsel withdrew evidence of two evictions prior to the signing of the lease at the pretrial hearing and did not offer a certified copy of any other prior eviction at the pretrial hearing or at trial. Aplt. Br. at 13, No. 4 and at 14, No. 5; V R. at 36. Therefore, only the eviction by Mr. McNew appears to remain as evidence that Ms. Smith lied to Mrs. Morris about not having been previously evicted.

the form of an opinion if the opinion is rationally based on the perception of the witness and helpful to the determination of a fact in issue. Fed. R. Evid. 701. Mrs. Morris' entire argument in support of admitting opinion testimony consists of:

> "In addition *Rule 701* allows opinion testimony by lay witnesses. This rule would support testimony by lay witnesses that in their opinion the victim is untruthful."

Aplt. Br. at 33. We, therefore, deem this argument waived for failure to brief. Phillips v. Calhoun, 956 F.2d 949, 953 (10th Cir. 1992).

B. Rebuttal Witness

Mrs. Morris asserts that the trial court erred in allowing the Government's rebuttal evidence - the testimony of Ms. Smith - which should have been introduced in the case-in-chief. Aplt. Br. at 34. We review the trial court's decision to admit or exclude rebuttal evidence for abuse of discretion. Koch v. Koch Ind's, Inc., 203 F.3d 1202, 1224 (10th Cir. 2000). "Rebuttal evidence may be introduced to explain, repel, contradict or disprove an adversary's proof." United States v. LiCausi, 167 F.3d 36, 52 (1st Cir. 1999) (internal citations omitted); Charles A. Wright & Victor J. Gold, 28 Federal Practice & Procedure § 6164, at 381 (1993). It is within the trial court's discretion to allow evidence offered in rebuttal that would achieve a proper function of rebuttal, but also could have been offered during the Government's case-in-chief. Federal Practice §

6164, at 382-83 (citing cases therein). Mrs. Morris testified that Ms. Smith gave her permission to cash the checks. Ms. Smith's testimony that she did not give permission was offered to contradict Mrs. Morris' testimony and, therefore, was offered to achieve a proper function of rebuttal. We find that the trial court did not abuse its discretion in allowing Ms. Smith to testify in rebuttal. Additionally, we note that if there was any prejudice due to Ms. Smith testifying in rebuttal, it was eliminated by the trial court allowing Mrs. Morris to be recalled in surrebuttal.

C. <u>Batson</u> Challenge

Mrs. Morris contends that the trial court improperly allowed the Government to use a peremptory strike against a juror because she was African-American in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). Aplt. Br. at 37. In the context of a <u>Batson</u> violation, we review de novo whether the prosecutor's explanation is facially race neutral. We then review the trial court's ruling that the prosecutor did not intend to discriminate under the clearly erroneous standard. <u>United States v. Sneed</u>, 34 F.3d 1570, 1580 (10th Cir. 1994).

Mr. and Mrs. Morris and Ms. Smith are African-Americans. During jury selection, only three African-Americans appeared in the panel of thirty-one. Of the three African-Americans, only one, Ms. Yvette Maxwell, was excused by the Government. Consequently, the jury of thirteen included two African-Americans.

- 15 -

In response to Mrs. Morris' <u>Batson</u> challenge, the prosecutor explained that Ms. Maxwell's name appeared on a list of jurors who either had previously served on a jury that returned a not guilty verdict where the United States Attorney's office felt the case was clearly proven beyond a reasonable doubt or who had said or done something in the course of a previous trial that caused a significant legal problem for the court or the prosecutor's office. Aplee. Br. at 23 (quoting VI R. at 57-58). The prosecutor had the list of disfavored jurors at the bench during the challenge. <u>Id.</u> The prosecutor also noted that Ms. Maxwell was a landlord. The trial court accepted the prosecutor's explanation. VI R. at 58-59.

We find that the two reasons given, being on a list of disfavored jurors and being a landlord, are facially race neutral. After reviewing the record in this case, we are not left with a definite and firm conviction that a mistake was committed as to whether the prosecutor intended to discriminate. Accordingly, we hold that the trial court's ruling is not clearly erroneous and the Government's peremptory challenge was exercised in a constitutionally permissible manner.

AFFIRM.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 16 -